## Chreste v. Louisville Railway Company.

(Decided January 26, 1917.)

### Appeal from Jefferson Circuit Court (Common Pleas Branch, First Division).

1. Attorney and Client—Contract of Employment Procured Through Agent—Void.—A contract of employment of an attorney to conduct a litigation, which is procured through the efforts of a runner or agent of the attorney, who receives for his services a stipulated salary and a percentage of the fees derived by his employer from business secured by him, and who is not himself a lawyer, is void as against public policy.

2. Attorney and Client—When Contract of Employment Void—Evidence.—Evidence examined in an action by an attorney to recover a fee and held to support a verdict that the contract upon which the suit was brought, was procured for the attorney through the solicitation of a runner or agent, who was in the employ of and paid by the former for such solicitation of business.

3. Attorney and Client—Action to Recover Fee—Instructions.—In an action by an attorney to recover a fee, an instruction which told the jury, in substance, that they should find for plaintiff unless they believed that the plaintiff employed an agent to solicit employments for him in the conduct of litigation, and that plaintiff paid or promised to pay such agent a stated monthly sum or commission upon all business so procured by him, and that the contract sued on resulted from the efforts of such agent, was correct under the pleadings and evidence.

4. Appeal and Error—Opinions of Court of Appeals Conclusive.—An opinion of the Court of Appeals on the first appeal is conclusive of all questions raised on that appeal, but not conclusive as to a new question raised on the second appeal, nor as to a question improperly attempted to be raised on the first appeal but properly raised on the second appeal.

5. Attorney and Client—Action to Recover Fee.—In an action by an attorney to recover a fee of the adversary of his client, where such defendant interposes the defense that the contract of employment out of which the fee arose is illegal, the attorney cannot rely upon the promise of such defendant to pay his fee unless such promise is pleaded by him.

6. Appeal and Error—Misconduct of Counsel—Objection.—A party to an appeal cannot complain of misconduct of counsel for his opponent in his argument to the jury, where the remarks of counsel do not appear to have been objected to when made, or do not appear in the bill of exceptions, and are only brought to the attention of the trial court by affidavits filed on motion for a new trial.

EDWARD BLOOMFIELD and EDWARDS, OGDEN & PEAK for appellant.

STRAUS, LEE & KRIEGER, HOWARD B. LEE and ALFRED SELIGMAN for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE SETTLE—
Affirming.

This is the second appeal of this case. As the opinion on the first appeal, reported in 167 Ky. 75, contains an elaborate statement of the facts, it is unnecessary to repeat them here, further than to say that the matter in controversy is a claim of $500.00 asserted for a fee against the appellee, Louisville Railway Company, by intervening petition filed by the appellant, Robert Chreste, formerly a practicing attorney at the Louisville bar, in an action brought against appellee in the court below by one, Henry B. Drake, to recover of it damages for personal injuries alleged to have been sustained by him while a passenger on one of its cars. The trial of the action resulted in a verdict and judgment in Drake's favor for $1,000.00 damages. The suit was brought and recovery obtained for Drake by appellant as his attorney. After the recovery of the above amount appellee compromised and settled the judgment by paying Drake $300.00; following which appellant filed in the action the intervening petition, asking to be made a party, and claiming a statutory lien on the judgment for $500.00, upon the ground that Drake, by written contract made with him prior to the institution of the action, had employed him to bring same and had agreed to pay him as a fee for his services therein a sum equal to fifty per cent. of the amount recovered by judgment, which, as the amount recovered was $1,000.00, it was claimed, entitled him to $500.00. The railway company answered in two paragraphs, in the first of which it was alleged that it had settled with Drake in full for the sum of $300.00, and that if appellant was entitled to recover of it a fee at all, such recovery should be limited to a sum equal to fifty per cent. of that amount. But this paragraph was stricken out by the trial court, for the reason that if appellant was entitled to recover, such recovery should equal fifty per cent. of the judgment, namely, $500.00. By the second paragraph appellee alleged, in general terms, that appellant's contract with Drake was procured through the solicitation of an agent, which made the contract champertous and void because against public policy. His demurrer to this paragraph having been overruled, appellant filed a reply thereto, putting in issue its averments.

On the first trial of the case the only question submitted to the jury was whether or not the contract was obtained by solicitation; and the jury found that the contract was so obtained. Thereupon, the trial court entered a judgment in favor of the railway company. So on the first appeal the only question considered was whether a contract between a lawyer and his client, obtained by solicitation upon the part of the lawyer, was valid, or contrary to public policy and by reason thereof void; and in reversing the judgment of the lower court, we held that mere solicitation on the part of an attorney, unaccompanied by fraud, misrepresentation, undue influence or imposition of some kind, or other circumstances sufficient to invalidate the contract, is not of itself sufficient to render a contract between an attorney and client void on the ground that it is contrary to public policy. In the opinion we, in part, said:

"We find no provision of the constitution, or of our statutes, that directly or indirectly forbids an attorney from soliciting business. We find no decision of this court holding that such a contract is contrary to public policy. For the first time we are called on to deal with the question. In deciding every case, courts should project themselves into the future and anticipate, if possible, the probable consequence that will follow their decisions. . . . .

"Considering the difficulty of fixing the dividing line between what is proper and improper solicitation, the uncertainty that the doctrine would introduce into all contracts between attorneys and their clients, the fact that solicitation is not condemned at common law or denounced by our constitution or statutes, and the further fact that it is difficult to perceive upon what theory it can be said to be clearly injurious to the public good, we conclude that mere solicitation on the part of an attorney, unaccompanied by fraud, misrepresentation, undue influence or imposition of some kind, *or other circumstances sufficient to invalidate the contract,* is not of itself sufficient to, render a contract between an attorney and client void on the ground that it is contrary to public policy. It follows that the second paragraph of defendant's answer presented no defense and that the·demurrer thereto was improperly overruled."

Upon the return of the case, following its reversal, to the lower court for another trial, the appellee filed an

amended answer, which more specifically pleaded the circumstances surrounding the procuring of the contract whereby appellant was employed by Drake to bring the action against appellee. The original answer had merely alleged in general terms that the contract had been procured through the solicitation and persuasion of an agent representing the appellant; but in the amended answer it was alleged:

"That at the time said contract, sued upon by the intervening petitioner, was secured, said intervening petitioner had in his employ as an agent one Lloyd C. Sherrick; that said Lloyd C. Sherrick was not a student of law, and at said time and for some time prior thereto said Sherrick had been employed by the intervening petitioner as an agent for the sole purpose of stirring up litigation and of securing contracts of employment for said intervening petitioner; that said Lloyd C. Sherrick was employed at a monthly salary of $25.00 and that, in addition thereto, it was stipulated between said Sherrick and said intervening petitioner that said Sherrick was to have a one-fourth interest in all contracts of employment secured by said Sherrick for said intervening petitioner; that said Sherrick made his headquarters at the office of the intervening petitioner, and there he and said intervening petitioner daily scanned the newspapers and clipped therefrom the notices of accidents, and that one of the duties of said Sherrick was to visit such injured persons, whose names appeared in the newspapers, or whose names could be secured in any other way, and seek to have them employ said intervening petitioner as their attorney to bring an action for damages; that for this purpose said Sherrick was supplied by said intervening petitioner with blank forms of contract to be carried by him constantly, and that the sole duties of said Sherrick, in connection with said employment, was to visit injured persons and to attempt to secure an employment for said intervening petitioner; that said Sherrick did receive information that the plaintiff, Henry B. Drake, had been injured; that within thirty minutes after receiving said information he visited the house of said Drake, where said Drake was confined in bed, and sought him to employ said intervening petitioner, and that, as the result of said efforts on the part of said Sherrick, said Drake did employ said intervening petitioner and did

sign said contract of employment, which is herein sued on; that said Sherrick had and now has, under his contract of employment with the intervening petitioner, a one-fourth interest in any fee that may be collected as the result of said contract; that said contract so secured by said intervening petitioner was unenforceable, being contrary to public policy and good morals."

Appellant filed a demurrer to the amended answer and to the second paragraph of the answer as thus amended, but the demurrer was overruled, and he then filed a reply, traversing the allegations of the amended answer. The second trial resulted in a verdict in behalf of appellee; and from the judgment entered thereon the present or second appeal is prosecuted.

It is now contended by appellant that the trial court clearly erred to his prejudice in permitting the amended answer to be filed; that the filing thereof was not permissible under the opinion of this court upon the first appeal, and that as it was held in the former opinion that solicitation by an attorney, no matter in what manner it is practiced, is not a defense to a suit on a contract such as is here involved, unless there had been fraud or undue influence practiced upon the client, the trial court was bound by that opinion as the law of the case.

On the other hand, it is contended for appellee that the filing of the amended answer was properly allowed, in view of its setting forth the facts attending appellant's employment by Drake, which demonstrate the exercise of the undue influence "or other circumstances sufficient to invalidate the contract," the former opinion declares would render it void as against public policy; and, moreover, that the amended answer conforms to the opinion of this court in Chreste v. Commonwealth, 171 Ky. 77, decided since the former appeal in this case.

Chreste v. Commonwealth, *supra*, was a proceeding instituted to disbar the appellant, Robert A. Chreste, from the practice of law, in which his procurement of a contract, obtained under like circumstances to that he made with Drake in the instant case, was urged as a ground for disbarment. In the opinion it is said:

"In the case of Lenihan v. Commonwealth, 165 Ky. 93, and Chreste v. Louisville Ry. Co., 167 Ky. 75, we had occasion to set down a few observations about the practice of soliciting business by lawyers, and in the

Lenihan case said this: 'It is generally known that there are lawyers who solicit employment in cases in which they would not otherwise be engaged, and this conduct on the part of a few has subjected the profession as a body to no little reproach and the lawyers engaged in this practice to much deserved censure.'

"And in the Chreste case it was said: 'That as personal solicitation is not condemned at common law or denounced by our constitution or statutes, and the further fact that it is difficult to perceive upon what theory it can be said to be clearly injurious to the public good, we conclude that mere solicitation on the part of an attorney, unaccompanied by fraud, misrepresentation, undue influence or imposition of some kind, or other circumstances is not of itself sufficient to render a contract between an attorney and client void on the ground that it is contrary to public policy.'

"But there is a very wide difference between the unprofessional and undignified practice of personal solicitation of business and the indefensible and vicious practice of employing agents and runners who are not lawyers to go about the country soliciting business and stirring up strife and litigation for a stipulated consideration or a contingent fee. Such agents and runners as these are not restrained in their activities by any professional or ethical sense of propriety. Their sole object is to secure clients for their employers and they use in this effort such arts and schemes as will get results without giving any thought or attention to the disturbing and objectionable nature of the business in which they are engaged.

"The friends, acquaintances and associates of an attorney have of course the unquestioned right to sound his praises and divert to him such clients as they can persuade in a legitimate way to engage his services. But there is a manifest difference between securing business through the influence and efforts of friends, acquaintances and associates and securing it through the methods employed by the strictly commercial enterprise of hired agents. And it would seem at first impression to strike any fair-minded man, whether lawyer or not, as being highly improper for an attorney to have agents or runners to go about and make their living by securing for him employment in cases he would not otherwise get. It is entirely outside of the legiti-

mate functions of an attorney to incite litigation, although it should be said that there are few who indulge in this unprofessional conduct, and, obviously, it is much more reprehensible for an attorney to hire another, and often irresponsible, person to do this for him.

"It would also be idle to say that solicitors such as Sherrick and Saunders confined their efforts merely to persuading prospective clients who had already made up their minds to litigate, to engage the services of the attorney they represented without in any way endeavoring to induce them to bring a suit or present a claim or demand. When men accept employment to render such service as these men were expected to render, and their pay depends on the volume of business they can get for their employer, everybody knows that many of them will use every means possible to obtain the business without any regard to the method that may be used to secure it. And it is too plain for argument that under a just and enlightened administration of the law practices like this which it is charged Chreste engaged in, should not be tolerated by officers of the court. Ingersol v. Coal Creek Coal Co., 117 Tenn. 263, 9 L. R. A. (N. S.) 282; Alpers v. Hunt, 86 Cal. 78, 9 L. R. A. 483; Langdon v. Conlin, 67 Neb. 243, 60 L. R. A. 429."

Tested by the rule announced in Chreste v. Commonwealth, *supra*, and cases therein cited, we think it manifest that the facts of the instant case (which were for the first time sufficiently pleaded in the amended answer of appellee), make it plain that the contract of employment obtained of Drake by appellant, through his agent, Lloyd C. Sherrick, was procured through undue influence and under the circumstances which the opinion on the former appeal declares sufficient to render the contract void on the ground that it is contrary to public policy.

In looking to the evidence heard on the last trial, we find that that introduced in behalf of the appellee which was more elaborate and convincing than on the first trial, fully sustains the averments of its amended answer, for it shows that Sherrick obtained for appellant the contract with Drake whereby appellant brought for the latter the action for damages against the appellee; that Sherrick was then and as much as three months altogether the employed agent of appellant for the purpose of procuring for the latter such contracts

of employment, and for his services as such agent was paid by appellant a salary of $25.00 per month, and, as further compensation, was to have one-fourth of such fees as might be recovered by appellant under such contracts of employment secured by Sherrick; that Sherrick made his headquarters at the office of appellant, was furnished by him with blank forms of contract like that used with Drake, to be signed by the persons from whom he obtained employment for appellant, and was daily furnished by the latter with newspaper clippings containing accounts of accidents resulting in injury to persons from whom such employments might be obtained; and, further, that Sherrick has a one-fourth interest in any fee that may be collected by appellant of appellee under his contract with Drake. In addition to the evidence referred to, the checks received by Sherrick from appellant in payment of his monthly salary were produced on the trial. This evidence was, it is true, in some measure contradicted by that of appellant; but it was the province of the jury to determine the truth of the matter, and we are unable to say that the verdict of the jury sustaining appellee's defense was unauthorized by the evidence.

Appellant complains of the instruction under which this issue was submitted to the jury. The instruction is as follows:

"1. You will find for the plaintiff, Chreste, and award him the sum of $500.00, with interest thereon at the rate of 6% per annum from June 17, 1913, unless, from the evidence, you believe that the plaintiff, Chreste, employed the witness, Sherrick, to solicit employment for him as a lawyer in law suits, and that Chreste paid or promised to pay Sherrick a stated monthly sum for his services, or that he paid or promised to pay him a commission upon all business brought to him by Sherrick, and that pursuant to such employment, if such employment was made, Sherrick solicited Henry B. Drake to employ Chreste as his attorney, and that as a result of such solicitation, if there was any solicitation, Henry B. Drake did employ Chreste as his attorney, in which event the law is for the defendant and you should so find."

We think this instruction clearly states the law applicable to the issue of fact submitted to the jury. If solicitation of employment in the manner here shown

is illegal, as this court has declared in the cases cited in the opinion, we know of no better form of advising the jury of the law than that adopted by the court in the instruction.

The defense as to the invalidity of the contract upon which appellant rests his recovery, relied on by appellee in the first trial in the court below, although allowed by that court as presented, was not available, because not sufficiently pleaded in the original answer; hence the first appeal properly resulted in a reversal of the judgment rendered in its behalf by the lower court. But when, upon the return of the case to the lower court, the appellee's defense was sufficiently pleaded by the amended answer filed by it, and on the second trial was supported by sufficient proof, and judgment again went in its favor, there is no merit in appellant's contention that its right to an affirmance of that judgment on the present appeal is prevented by the opinion on the first appeal. The opinion on the first appeal is conclusive of all questions raised on that appeal, but not conclusive as to a new question raised on the second appeal, or as to a question improperly attempted to be raised on the first appeal but properly raised on the second appeal.

Appellant also complains of the action of the circuit court in sustaining appellee's demurrer to the second paragraph of his reply to the amended answer. It was alleged in this paragraph of the reply that appellee, at the time it made the settlement with the appellant's client, Drake, of the judgment recovered by the latter, agreed in writing, to pay appellant's fee as attorney in the case, and that by reason of such agreement appellee was estopped to rely upon the defense set up in the amended answer. This contention of appellant is doubtless rested on the case of Bowser v. Patrick, 23 R. 1581, in which it was held that resistance of a recovery upon a contract for an attorney's fee on a plea of champerty, was not available, if there was an undertaking on the part of the defendant to pay the attorney his fee. But the difficulty confronting the appellant here is that he did not, as was done in Bowser v. Patrick, *supra*, rely in his petition upon the promise of the defendant to pay the fee, but merely contented himself with the assertion of the lien alleged to have been given by the statute, which, it was claimed, compelled the appellee, in set-

tling with his client, to account to him for it. It was for this reason, we take it, that the trial court sustained the demurrer to the reply. What appellant should have done was to file an amended petition setting up this promise and relying upon it as a ground of recovery. Such a plea would not have been inconsistent with his right to assert the statutory lien for the fee. But he did not take this course; and he cannot complain of the ruling of the court in sustaining the demurrer.

Appellant further complains of alleged misconduct on the part of counsel for appellee in his concluding argument to the jury in applying to appellant words offensive in meaning. But this complaint cannot be considered, as it does not appear to have been objected to when made, nor does it appear in the bill of exceptions, and it was only brought to the attention of the trial court by affidavits filed on the motion for a new trial.

As we are constrained to hold that the circumstances under which appellant obtained the contract of employment from H. B. Drake constitute "illegal solicitation," violative of public policy, and the record appears to be free of prejudicial error, the verdict of the jury will not be disturbed; hence the judgment of the circuit court is affirmed.