## Birkhead v. Home Insurance Co.

(Decided May 7, 1935.)

T. F. BIRKHEAD, H. A. BIRKHEAD and LEE GIBSON for appellant.

F. M. DRAKE and CLEMENTS & CLEMENTS for appellee.

OPINION OF THE COURT BY JUDGE REES—Affirming.

A dwelling house owned by T. F. Birkhead was destroyed by fire in May, 1932. He brought this action against the Home Insurance Company to recover the sum of $750 under an insurance policy which he alleged was in force at the time the fire occurred. The insurance company answered, denying that the policy was in force at the time of the fire, and it affirmatively pleaded in its answer, first, that the plaintiff refused to accept the policy or to pay the premium, and, second, that the policy had been canceled. The case was submitted to the jury on these two issues, and the jury returned a verdict for the defendant.

Two grounds are urged for a reversal of the judgment: (1) Erroneous instructions; and (2) improper argument by the attorney for the defendant. In instruction No. 1 the court told the jury in substance that they should find for the defendant if they believed that the policy had been canceled before the fire. This instruction was offered by the plaintiff. The court also gave instruction L, in which the jury was told that, if the plaintiff declined or refused to accept the policy and to become obligated to pay the premium therefor, they should find for the defendant. It is insisted that this instruction should not have been given, as there was no evidence to authorize it.

Mr. Birkhead testified that he purchased at a master commissioner's sale on October 23, 1931, a house and lot owned by the heirs of John Livingston. James

R. Fuqua, administrator of John Livingston, had insured the house and outbuildings as the property of the Livingston heirs in August, 1931. The policy was for $1,000, and the Home Insurance Company was the insurer. Conceiving that the change in ownership canceled the policy, Mr. Birkhead asked Fuqua to notify the agent of the Home Insurance Company to cancel the old policy and to issue a new one to him for $900. He testified that some time later Miss Monday, a clerk in the office of the E. M. Ford Company, an insurance agency representing the appellee, brought to his office a policy dated November 2, 1931, and that he instructed her to retain the policy and to keep his property insured for $900, including $750 on the dwelling, and that he would settle with the insurance agency for the premium after he had settled with Fuqua for the unearned premium on the policy which had been canceled, which the insurance company owed to Fuqua, and that he would pay the difference, if any, to the insurance company. Miss Monday retained the policy under that agreement, and he heard nothing further in regard to it until after the fire. Miss Monday denied that she had ever been in Mr. Birkhead's office or that she ever had any conversation with him in regard to the policy in question. In the course of her testimony she said: "I never was in Judge Birkhead's office in my life. I could not tell anybody here where it is. Furthermore, I do not deliver policies. It is my duty to write them."

Lawrence Weill, an employee of the E. M. Ford Company, testified that he took the policy to Mr. Birkhead's office and offered to deliver it. His version of what occurred at this meeting is as follows:

> "In the general routine of my business I had a policy to deliver and I took it over to Judge Birkhead's office and Judge Birkhead said he did not know whether he would want that policy or not, to take that policy back and hold it for a few days, and I took the policy back to the office and turned it back over to the girls there with that information, to be held a few days until Judge Birkhead decided whether he wanted the policy or not."

E. M. Ford testified that he had a conversation over the telephone with Mr. Birkhead on December 8, 1931, in which Mr. Birkhead directed him to cancel the policy, as he had learned that he could get the insur-

ance at a cheaper rate in another company; that pursuant to Mr. Birkhead's request the policy was canceled "flat," which means without the payment of any premium. Mr. Birkhead denied that the conversations related by Weill and Ford ever occurred.

From this brief summary of the evidence it will be seen that there was a direct conflict in the evidence as to whether any contract was ever made; there being some evidence tending to show that Mr. Birkhead refused to accept the policy or to become obligated for the premium. This made an issue which the court properly submitted to the jury in instruction L.

Most of the argument of the attorney for the defendant which appellant claims was improper was directed to the issue presented by instruction L. In an affidavit filed in support of the motion for a new trial, the alleged improper statements were set out, but no objections were made nor exceptions taken before the conclusion of the trial, and they were not incorporated in the bill of exceptions. Appellant seeks to excuse his failure to object to the alleged improper statements on the ground that the trial judge was in his office adjoining the courtroom during the argument, and was not present to rule on the objections, if made. The matter should have been called to the court's attention, however, and the objections made before the case was submitted to the jury. City of Dayton v. Lory, 169 Ky. 94, 183 S. W. 252. It is a well-established rule of practice that misconduct on the part of any attorney in making an improper argument to the jury cannot be considered unless the alleged improper argument is objected to when made and is incorporated in the bill of exceptions. It is not sufficient to show misconduct of counsel in the argument of a case in the motion and grounds for a new trial supported by affidavits. Chreste v. Louisville Railway Co., 173 Ky. 486, 191 S. W. 265; Illinois Central Railroad Co. v. Evans, 170 Ky. 536, 186 S. W. 173. It may be said in passing that the attorney for the defendant filed a counter affidavit in which he denied making the statements charged to him in appellant's affidavit.

Finding no error prejudicial to appellant's substantial rights, the judgment is affirmed.