## Hurst, Jr., Administrator, etc. v. Southern Railway Company, et al.

### (Decided June 10, 1919.)

### Appeal from Jefferson Circuit Court (Common Pleas Branch, Fourth Division).

1. Evidence—Opinion Evidence—Competency of Experts.—One who had had several years' experience as a fireman and freight conductor, but who admitted that he was not acquainted with the present day equipment for stopping engines, and who had not been on an engine for fifteen years, was not qualified to testify that the equipment at the present time was more perfect than it was when he was in the railroad business, and acted more efficiently and more quickly, and that at the time he was in the railroad business, the equipment was such that the engine, causing the decedent's death, could have been stopped within twenty feet.

2. Appeal and Error—Bill of Exceptions—Preservation of Objections —Misconduct of Counsel.—Misconduct of counsel in argument to the jury cannot be considered, unless shown by the bill of exceptions.

3.  New Trial—Grounds—Inadequacy of Damages.—Where only general damages are sought, the court, on appeal, will not grant a new trial solely on account of the inadequacy thereof.

4.  Appeal and Error—Damages—Punitive Damages—Province of Jury.—Since punitive damages are not recoverable as a matter of right, but their allowance rests entirely in the discretion of the jury, a verdict disallowing punitive damages will not be reversed, although flagrantly against the evidence.

ROBERT L. PAGE and W. W. DAVIES for appellant.

HUMPHREY, CRAWFORD, MIDDLETON & HUMPHREY for appellees.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming.

Joseph Hurst, Jr., as administrator of Frances Wessels, deceased, brought this suit against the Southern Railway Company in Kentucky, the Kentucky & Indiana Terminal Railroad Company and the Louisville Railway Company, to recover damages for her death. From a verdict and judgment in his favor for $2,500.00 against the Southern Railway Company in Kentucky, and the Kentucky & Indiana Terminal Railroad Company, plaintiff appeals.

The decedent, a young woman thirty-two years of age, was employed as a seamstress by the Kaufman-Straus Company, at a salary of $7.00 a week. On the evening of February 12, 1917, she was a passenger upon a street car of the Louisville Railway Company. The street car was going west on Broadway. At Broadway and 30th streets, the tracks of the Kentucky & Indiana Terminal Railroad Company cross Broadway. At this point, crossing gates are maintained on each side of the railroad tracks for the protection of the public. The gates were operated by a man in a tower located on the northeast of the intersection. While the gates and tower were owned by the Kentucky & Indiana Terminal Railroad Company, they were operated also for the use and benefit of the Southern Railway Company. When the street car on which the decedent was a passenger reached 30th street the gates were up and it proceeded to cross the railroad tracks. At that time, a Southern engine drawing a caboose was approaching at a speed of from 8 to 10 miles an hour, and there is a sharp conflict in the evidence as to whether the headlight was burning. Owing

to the physical condition at the place of the accident, the engineer could not see the street car until he got within 30 or 40 feet of it. According to his evidence, he did all that he could to stop the engine but was unable to do so. The engine collided with the street car and killed the decedent.

The first error assigned is the exclusion of the evidence of H. A. Larue, an alleged expert, as to the space within which the engine that collided with the street car could have been stopped. Larue testified that he had had twenty years' experience in operating freight trains, extending from about 1877 until the year 1900. He was first a fireman and then served for about fourteen years as a freight conductor. His services as freight conductor ended about the year 1894. During his experience as fireman and conductor, they used air brakes and sand on engines for a while. They also had the throttle valve and the necessary apparatus for reversing. Thereupon, the following questions were asked and the following avowals made:

"12. Now, Mr. Larue, from your knowledge on this subject, in your opinion how long, by the use of sand and air, or the reverse apparatus, would it take an engine going on a fairly level track, on a fair night, with the weather fair, with a caboose attached—only a caboose—how long would it take such an engine to come to a stop?

"Objected to by counsel for the defendant, and the court sustained said objection, to which ruling of the court the plaintiff, by counsel, excepted.

"By the court: You will have to show this gentleman is familiar with the kind of apparatus that is used now. The court does not know, and neither does the jury, whether the apparatus used in 1894 is the same or similar to that used in—

"A. I was, from 1894 until 1900 on a passenger train.

"By Mr. Humphrey: He says he has been out of it seventeen years.

"13. Well, is the equipment now more modern and perfect than it was in your days?

"Objected to by counsel for the defendants.

"By the court: Are you familiar with the present day equipment of engines for stopping?

"A. I could not say that I was; I have not been on an engine for fifteen years.

"By the court: You haven't shown how this engine was equipped.

"By Mr. Davies: I will try to show it; I will submit, of course, to your honor's ruling, but I will try to show that.

"14.   Do you know now whether or not the general equipment for stopping engines is more perfect at this time than it was when you quit running on the road,

"Objected to by counsel for the defendants, and the court sustained said objection, to which ruling of the court the plaintiff, by counsel, excepted.

"By the court: He said he didn't know how they are at the present day.

"15.   Then I will ask—to get it in the record—I will ask you if the engine that you were familiar with in your day and time had such equipment as you know about in the way of reverse and sand and air, if that engine, under those conditions, or how soon that engine could be stopped under those conditions?

"By Mr. Humphrey: We are not trying that kind of engine.

"And the court sustained the objection of the defendants, to which ruling of the court the plaintiff, by counsel, excepted, and made the following avowal out of the hearing of the jury:

"The plaintiff avows that if the witness were permitted to answer the question he would state, and the same would be true, that the equipment at the present time is more perfect than it was at the time when he was in the railroad business and acts more efficiently and more quickly, and that at the time he was in the railroad business the equipment which he was familiar with at that time operated so that in these circumstances that engine could have been stopped in twenty feet."

The trial of this case took place on October 22, 1917. It will be observed that the witness was unable to say that he was acquainted with the present day equipment for stopping engines, and admitted that he had not been on an engine for fifteen years. Notwithstanding this fact, it is avowed that he would state that the equipment at the present time was more perfect than it was at the time when he was in the railroad business and acted more efficiently and more quickly, and that with the equipment with which he was familiar when he was in

the railroad business, the engine could have been stopped in twenty feet.

While it is true that the distance within which an engine may be stopped is a proper subject for expert testimony, it is necessary that the witness should have special knowledge of the subject as applied to the facts and conditions. Here the witness disqualified himself by showing that he was not acquainted with the equipment for stopping an engine then in use, and that he had not been on an engine for fifteen years. Had he testified in accordance with the avowal, the result would have been to permit him to make a mere argument concerning a matter about which he had no special knowledge, instead of giving an opinion concerning a matter about which he was qualified to speak. It follows that the trial court did not err in excluding his evidence on the ground that he did not qualify as an expert.

Another ground urged for reversal is the misconduct of counsel for defendant in his argument to the jury. The remarks alleged to have been made by counsel do not appear in the bill of exceptions, but appear only in the affidavit of plaintiff's counsel filed in support of a motion for a new trial. It is now the established rule in this state that the only way in which matters occurring on a trial in the circuit court may be brought up for review is by bill of exceptions, and that the misconduct of counsel in the argument to the jury cannot be considered unless shown by the bill of exceptions. Southern Ry. Co. in Kentucky v. Thacker's Admx., 156 Ky. 483, 161 S. W. 236; I. C. R. R. Co. v. Evans, 170 Ky. 356, 186 S. W. 173; Bannon v Louisville Trust Co., 150 Ky. 401, 150 S. W. 51.

Another contention is that damages allowed are so small that they do not equal the actual pecuniary injuries sustained There might be some merit in this contention if special damages, such as medical bills, lost time, etc., had been sought, and the jury had returned a verdict wholly insufficient to compensate for the special damages actually alleged and proven. As a matter of fact, however, only general damages were sought, and where this is the case, we are not at liberty to grant a new trial solely on account of the inadequacy thereof. Rossi v. Jewel Jellico Coal Co., 157 Ky. 332, 163 S. W. 220; Conder v. Ledford, 167 Ky. 137, 180 S. W. 77; C. & O. Ry. Co. v. Williams' Admr., 179 Ky. 333, 200 S. W. 451.

Another insistence is that the gatekeeper was guilty of the grossest kind of negligence in raising the gates and inviting the street car to cross in front of the approaching engine, and that being true, the finding of the jury that plaintiff was entitled only to compensatory damages was flagrantly against the evidence. It is the well settled rule in this and in almost all jurisdictions, that punitive damages are not recoverable as a matter of right, but that their allowance rests entirely in the discretion of the jury. Ky. Central R. R. Co. v. Gastineau, 83 Ky. 119; Louisville & N. R. Co. v. Cottengim, 104 S. W. 280, 13 L. R. A. (N. S.) 624; 8 R. C. L. Sec. 136, p. 592; Fink v. Thomas, 66 West Va. 487, 19 Ann. Cases 571 and note.

Were we to uphold plaintiff's contention and announce the rule that a verdict disallowing punitive damages should be reversed whenever flagrantly against the evidence, the necessary effect would be to deprive the jury of its discretion, and to hold that under certain circumstances punitive damages were recoverable as a matter of right, thus overturning the long established rule.

Judgment affirmed.