## Whallen's Executors v. Moore et al.

(Decided March 24, 1933.)

(Common Pleas Branch, Second Division).

CRAWFORD, MIDDLETON, MILNER & SEELBACH, ARTHUR B. BENSINGER and LOUIS SEELBACH for appellants.

FRANK V. BENTON, C. W. YUNGBLUT, L. W. SCOTT, FRANK V. BENTON, Jr., and L. D. GREENE for appellees.

OPINION OF THE COURT BY JUDGE REES—Reversing.

On March 15, 1930, James P. Whallen, a resident of Jefferson county, Ky., died testate leaving a widow, Mrs. Susie B. Whallen, but no children. His only heirs at law were two nieces, Mrs. Nora Moore and Mrs. Ella Herfurth, children of his deceased brother, John H. Whallen. He left an estate of approximately $1,000,-000. In his will dated December 9, 1929, he made eighty-eight specific bequests ranging in amount from $500 to $25,000 to personal friends, relatives, business associates, employees, and charitable institutions. The total of these bequests was $273,000. In the third clause of his will he gave all of his personal effects, such as jewelry, household furniture, and other articles of personal and domestic use, to his wife, and in the fourth clause he directed that the sum of $400,000 be set aside and held in trust for the benefit of his wife during her lifetime. He directed that the trustees should pay to his wife out of this fund an annual net income of $25,-000, and, in the event the net income from the trust fund did not amount to $25,000 in any year, the trustees were directed to take from the principal of the trust fund a sum sufficient to bring her annual net income up to that amount. It was provided that at the death of his wife the balance of the principal of the trust fund then remaining in the hands of the trustees should go to his residuary legatees and devisees which are six charitable institutions in Louisville, Ky. In the sixth clause of his will he bequeathed $5,000 to each of his nieces. This clause reads:

"I bequeath and devise unto my two nieces, Mrs. Nora Moore and Mrs. Ella Herfurth, both of Newport, Kentucky, the sum of Five Thousand Dollars ($5,000.00) each, as a token of my affectionate remembrance and regard. I make no further provision for them out of my estate as they are the sole surviving heirs and devisees of my brother, John H. Whallen, deceased, and each of them, therefore, is entitled to and will receive a very large estate as soon as it is practical to liquidate the assets of Whallen Brothers, which assets are owned jointly and equally by myself and the heirs of my deceased brother, John, and which under my management and without any charge by me, have been substantially increased in value since his death."

Mrs. Nora Moore and Mrs. Ella Herfurth contested the will of their uncle on the grounds of undue influence and lack of testamentary capacity. On the trial of the case the jury returned a verdict finding the instrument dated December 9, 1929, to be the last will and testament of James P. Whallen. This verdict was returned on February 7, 1931. The contestants moved for a new trial, and on June 1, 1931, the circuit court sustained their motion, set aside the verdict of the jury sustaining the validity of the will, and granted a new trial. The propounders prepared a bill of exceptions and took the requisite steps to preserve their right to have the first verdict reinstated in the event they were unsuccessful on the second trial. The case was continued from time to time, and finally was set for trial on February 8, 1932. On February 9, 1932, after the commencement of the trial, the contestants moved to dismiss the action without prejudice, to which the contestees objected. Their objection was overruled, and the cause was dismissed without prejudice. On the theory that the dismissal of the cause without prejudice deprived them of a substantial right, and that therefore it was a final, appealable order, the contestees have prosecuted this appeal, and they ask for a reinstatement of the verdict returned at the trial held in February, 1931.

The first question presented is, Was the order of dismissal, under the circumstances, a final order rendering the record subject to review? No appeal lies from

an order granting a new trial, but the party in whose favor the vacated judgment has been rendered, by taking proper exceptions to the order granting the new trial and preparing and filing his bill of exceptions, may, after the final disposition of the action, appeal from the judgment and carry up the former judgment and bill of exceptions and have reviewed the action of the trial court in setting aside the verdict and judgment upon the first trial. Northcutt v. Nicholson, 246 Ky. 641, 55 S. W. (2d) 659, 661; City of Madisonville v. Nisbit, 239 Ky. 366, 39 S. W. (2d) 690; Steinke v. North Vernon Lumber Company, 190 Ky. 231, 227 S. W. 274, 278; Dailey v. Lexington & Eastern Railway Company, 180 Ky. 668, 203 S. W. 569.

The trial court is vested with a large discretion when passing upon a motion for a new trial, and, unless that discretion is abused, this court will not interfere, and it is more reluctant to set aside a judgment granting, than one refusing, a new trial. Smith v. Smith, 243 Ky. 240, 47 S. W. (2d) 1036; City of Madisonville v. Nisbit, supra; Webster County v. Lutz, 234 Ky. 618, 28 S. W. (2d) 966; Clark v. Pullman Company, 205 Ky. 336, 265 S. W. 820; Wilson v. Rockcastle Mining, Lumber & Oil Company, 200 Ky. 484, 255 S. W. 88. But, where the verdict is warranted by the evidence and no error appears in the record, an order granting a new trial on erroneous grounds will not be sustained. Mott v. Willman, 232 Ky. 594, 24 S. W. (2d) 311; Strode v. Strode, 194 Ky. 665, 240 S. W. 368, 27 A. L. R. 313; Crowley v. L. & N. R. Co., 55 S. W. 434, 21 Ky. Law Rep. 1434; Richards v. L. & N. R. Co., 49 S. W. 419, 20 Ky. Law Rep. 1478. Under our laws, an action may be dismissed by the plaintiff as a matter of right before the final submission of the case to the jury. Section 371, Civil Code of Practice; Siddens v. Thomas, 237 Ky. 362, 35 S. W. (2d) 537; Lowther v. Glenn, 189 Ky. 687, 225 S. W. 1066; Ray v. Ellis, 162 Ky. 517, 172 S. W. 951.

Ordinarily no rights have accrued to the defendant and no injury will be done to him by the dismissal, but, where the defendant has obtained a verdict and judgment in his favor and a new trial is granted, he has acquired a substantial right of which he cannot be deprived without causing him an injustice. Upon a final disposition of the action, he has the right to appeal to this court and to bring up the record of the first trial

for review, and, if it appears that the trial court abused a sound discretion in granting a new trial, to have reinstated the verdict and judgment on the first trial. That is a substantial right that accrued to contestees in this case in consequence of these proceedings. If an appeal is not available to them when the contestants dismiss the action without prejudice, then they are forever barred from attempting to enforce the right which they had acquired as a result of the first trial. If appellees' contention that appellants cannot maintain this appeal is sound, then it always is within the power of a plaintiff, after he has lost on the first trial and his motion for a new trial has been sustained, to deprive the defendant of the rights that have accrued to him by reason of the first trial by dismissing the action without prejudice and immediately instituting another one.

> In Northcutt v. Nicholson, supra, the court said: "An order granting a new trial is not a final judgment in the sense that it may be appealed from at once, but it is final in the sense that the excepting party has been divested of a right which the court making the order cannot restore after the expiration of the term. The right of appeal is merely held in abeyance pending the subsequent trial and final disposition of the case."

And in Harrison v. Lebanon Waterworks Company, 91 Ky. 255, 15 S. W. 522, 12 Ky. Law Rep. 822, 34 Am. St. Rep. 180, it was said:

> "A final order or judgment from which an appeal will lie in this court either terminates the action itself or operates to divest some right in such manner as to put it out of the power of the court making the order, after the expiration of the term, to place the parties in their original condition."

In Slater v. Commonwealth, 239 Ky. 620, 40 S. W. (2d) 389, it was held that the defendant had the right to appeal from an order dismissing the indictment and discharging him from custody when the order prejudiced his substantial rights. The order of dismissal without prejudice in the present case was adverse to contestees' right to have a reinstatement of the judgment on an appeal from a judgment on a second trial, and we are therefore of the opinion that the order of

dismissal perfected contestees' right to appeal which had been held in abeyance and that this court has jurisdiction to review the record for the purpose of determining whether or not the trial court erred in vacating the judgment sustaining the will.

The trial judge in a written opinion gave two reasons for his action in vacating the judgment entered upon the verdict of the jury sustaining the will: (1) "Unfairness in the trial;" and (2) error in instruction A. The acts occurring at the trial which the trial judge deemed unfair are, in substance, the following, as described in his opinion: A large majority of the persons present at the trial were in sympathy with the propounders, and many of them manifested their interest during the course of the trial by groans of disapproval when testimony favorable to the contestants was given and by expressions of approval when the testimony was favorable to the propounders. One of the attorneys for the propounders was angered by a ruling of the court, and thereafter sat in a conspicuous place in view of the jury and frowned and scowled at the court during the nine days of the trial. Another attorney grinned very perceptibly when things developed unfavorably to the contestants, and one of the propounders frequently smiled and grinned derisively at the testimony. The record presents no evidence of unfairness upon the trial. If the alleged misconduct on the part of the attorneys, litigants, and spectators occurred, there is no reference to it in the record of the proceedings of the trial. No objections were made nor exceptions taken, and the bill of exceptions is silent on the subject. The first reference to the existence of such a situation is in the motion for a new trial. If the misconduct was as open, gross, and flagrant as appellees contend it was, it hardly is believable that they or their attorneys were unaware of it.

In American Engineering & Construction Company v. Crawford, 142 Ky. 217, 134 S. W. 448, 449, this court, in dealing with an analogous situation, said:

"It is also insisted that the official stenographer was guilty of misconduct on the trial, in this: that he sat directly in front of the jury and facing them, and by look and gesture addressed to the jury during the trial, gave clear indication of his partiality for plaintiff's side of the controversy, that by very

noticeable movements he very clearly indicated satisfaction of rulings that were made by the court against the defendant, and by motions, gestures, and laughter showed his bias to the side of the plaintiff. This complaint was first presented to the trial court on the motion for new trial by affidavits then filed. The affidavits deal in conclusions rather than facts. As the stenographer sat in front of the jury he necessarily would look toward them when he looked up, and it is not at all clear from the affidavits that the officer was guilty of any misconduct. But, aside from this, one of the affidavits referred to is filed by the president of the company who was present during the trial and saw what occurred. If there was any misconduct on the part of the officer, it was incumbent upon the defendant to present the matter then and there to the court. It could not quietly go through the trial with knowledge of the facts, take its chance of getting a verdict, and complain if the verdict was against it. A matter of this sort must be promptly brought to the attention of the court when the party knows of it, and if not then complained of, it is waived.''

Any misconduct occurring upon the trial, whether by the attorneys or others, must be brought to the attention of the court as soon as it is discovered, and, unless it is objected to, it cannot be relied upon as an error on a motion for a new trial. Standard Sanitary Manufacturing Company v. Brian's Administrator, 224 Ky. 419, 6 S. W. (2d) 491; Byers' Administrator v. Hines, 194 Ky. 448, 239 S. W. 783; Hurst, Administrator, v. Southern Railway Company, 184 Ky. 684, 212 S. W. 461; Chreste v. Louisville Railway Company, 173 Ky. 486, 191 S. W. 265; Lunsford v. Hatfield Coal Co., 166 Ky. 119, 178 S. W. 1166. In granting or refusing a new trial, the trial court is limited to the grounds shown by the record. If the rule were otherwise, a new trial could always be granted regardless of the condition of the record, and the reviewing court would be without any means to determine whether or not the trial court had abused its discretion. In Steinke v. North Vernon Lumber Company, supra, it was said:

''Of course the trial court has a broad discretion in granting and refusing a new trial, but this discretion must not be abused, and it is abused by the

granting of a new trial where no sufficient or sound reason exists or is shown therefor. Nor can it travel outside the record to find grounds for such new trial.''

The trial judge rested his decision to grant a new trial chiefly upon an error he assumed was present in an instruction which he gave to the jury. He gave the usual instructions on testamentary capacity and undue influence, and then gave instruction A, which reads:

"The court instructs the jury that any statements of James P. Whallen as to his intentions relative to the disposition of his property, which may have been introduced in evidence, shall not be considered by the jury in passing upon the question of whether or not the paper of December 9, 1929, was produced by undue influence, and that such statements are for your consideration only in determining whether or not James P. Whallen was of sound mind at the time of the execution of said paper dated December 9, 1929.''

On the hearing of the motion for a new trial, the trial judge concluded that he should have instructed the jury that declarations of testamentary intention were admissible to show "susceptibility to undue influence,'' and that the omission of such a statement from instruction A was a prejudicial error.

A careful scrutiny of the record fails to disclose any evidence of substance or consequence tending to show that undue influence was exercised by any one in connection with the execution of the will in contest. The evidence did not warrant an instruction on undue influence, and, conceding arguendo, without deciding, that instruction A as given is erroneous, contestants were not prejudiced. They had the benefit of instruction No. 2 on undue influence, and this was more than they were entitled to under the evidence. The evidence which they claim shows the exercise of undue influence was too meager to warrant an instruction on that feature of the case. Their claim is rested chiefly upon the theory that Horace McCrocklin had the opportunity to and did exercise undue influence over the testator in the execution of the will. Horace McCrocklin received $25,000 under the will, and was named one of the executors. He had been a business associate of the testator for nearly forty years, and for several years

had been his private secretary. Mrs. Goldie Murphy and Mrs. Doris Quinlan, daughters of Mrs. Herfurth, testified that McCrocklin had manifested an unfriendly feeling towards them, and Mrs. Murphy stated that on one occasion when she sought to see the testator, who was her greatuncle, at his office, McCrocklin endeavored to prevent the meeting by telling her the testator was not in when in fact he was temporarily absent in the washroom adjoining his office. Another witness, a former employee of the testator, testified that he met McCrocklin in the spring of 1930, and the latter said he regretted he did not mention to the testator, when the latter was preparing his will, a few of his former employees so the witness could be remembered in the will. This and a few other scraps of testimony of a similar nature, but having no more probative value, constituted all the evidence, if it can be classified as such, on the subject of undue influence. No facts, circumstances, or statements were proven which tended to indicate that any undue influence was exercised.

Undue influence may be proven by circumstances, but, to authorize an instruction on the subject, there must be some proof of substance upon which to base it. Mere opportunity to exercise influence is not enough. Smith v. Smith, 243 Ky. 240, 47 S. W. (2d) 1036; Shelley v. Chilton's Administrator, 236 Ky. 221, 32 S. W. (2d) 974; Mossbarger v. Mossbarger's Administratrix, 230 Ky. 230, 18 S. W. (2d) 997; Gay v. Gay, 183 Ky. 238, 209 S. W. 11. In Brent v. Fleming, 165 Ky. 356, 176 S. W. 1134, 1135, it was said:

"We have frequently written that it is not sufficient to show that there was an opportunity to exercise undue influence, or that there was a possibility that it was exercised, but some evidence must be adduced showing that such influence was actually exercised. Crump v. Chenault, 154 Ky. 187, 156 S. W. 1053; Childers' Ex'r v. Cartwright, 136 Ky. 505, 124 S. W. 804. And by evidence is meant something of substance and relevant consequence, and not vague, uncertain, or irrelevant matter not carrying the quality of proof, or having fitness to induce conviction. Clark v. Young's Ex'x, 146 Ky. 377, 142 S. W. 1032. It is also the rule that any reasonable influence obtained by acts of kindness or by appeals to the feelings or understanding,

and not destroying free agency, is not undue influence. On the other hand, undue influence is such influence over the mind of the testator as destroys his free agency and constrains him to do against his will what he would otherwise refuse to do, whether exerted at one time or another, directly or indirectly, if it so operated on his mind at the time he executed the paper.''

The evidence of both the contestants and contestees shows conclusively that James P. Whallen was a strong-minded man, not easily influenced by any one, and that he retained this outstanding trait at least until the beginning of his fatal illness on February 15, 1930. It is suggested that the smallness of the bequests made by the testator to his nieces, coupled with the circumstances, especially statements made by him from time to time that they would share in his estate, was sufficient to justify the inference of undue influence. Mere inequality in the disposition of one's estate between the natural objects of his bounty is not of itself sufficient evidence of undue influence. Smith v. Smith, supra; Lisle v. Couchman, 146 Ky. 345, 142 S. W. 1023. The testimony relative to statements made by the testator concerning his testamentary intentions is vague and indefinite. The only time definitely fixed when he said he intended to leave a part of his estate to his nieces and grandnieces was more than fifteen years before his death.

In January, 1929, he executed a will very similar to the will in contest. In the will executed in January he made numerous bequests to individuals and charities, but these bequests were not to be paid until the death of his wife. All of his estate was left in trust during his wife's lifetime, and she was to be paid an annual income of $25,000. When he went to his attorney in December, 1929, to have his will changed, he stated that he wanted the special bequests paid at his death instead of at the death of his wife. The will of December 9, 1929, contained the same provision for his nieces, the contestants, as the former will. In fact clause 6 is a copy of a clause in the will that had been executed in the preceding January. The reasons given by the testator in the will itself for not making further provision for his nieces are sound and rational. He had acted as the trustee of the estate of his brother, John H. Whallen, since the latter's death in 1913, and by careful

management had largely increased its value. The contestants are the sole heirs and devisees of John H. Whallen, and, when their father's estate is finally settled, they will have received approximately $250,000 each.

Neither of the reasons assigned by the trial judge for vacating the judgment is supported by the record, and a careful reading of the record of the proceedings convinces us that the trial was without error and that the verdict was amply sustained by the evidence.

The overwhelming weight of the evidence favors the propounders upon the issue of testamentary capacity. In addition to the two contestants and the two daughers of Mrs. Herfurth, thirteen witnesses testified that the testator lacked testamentary capacity on December 9, 1929. Of these, four were lay witnesses who were speaking acquaintances of the testator and based their opinion of lack of testamentary capacity on statements or acts of a trivial nature which they observed during casual meetings on the street. None of them testified to an act or statement by him which would indicate that he did not possess normal mentality or that he was not entirely rational. Six physicians introduced as expert witnesses stated in response to the hypothetical question that the testator lacked testamentary capacity. Only one of these witnesses was acquainted with him, and this witness had not seen him for several years before his death. Miss Rose Lynch, a trained nurse, also testified on the question of testamentary capacity. She nursed the testator when he had influenza during 1928, for a week in October, 1929, and again during his fatal illness beginning February 15, 1930. She based her opinion chiefly upon the fact that he appeared to be physically weak and further that he failed to recognize her when he met her on the street after she had nursed him. The opinions expressed by these witnesses for contestants, both lay and expert, were based on facts in evidence having little, if any, probative value. The facts adduced did not show any variance from the normal in testator's conduct in his social and business contacts, and they failed to exhibit the slightest evidence of a disordered mind. A thorough discussion of the value of opinion evidence in will contests, whether given by lay or expert witnesses, will be found in the opinion in the recently decided case of

Dossenbach v. Reidhar's Executrix, 245 Ky. 449, 53 S. W. (2d) 731.

Dr. Emmet F. Horine, an eminent heart specialist of Louisville, who examined the testator in January, 1927, and again in September, 1929, stated that on the first examination he found peripheral arteriosclerosis, but the testator was then entirely rational. In September, 1929, except for the development of a moderate degree of congestive heart failure, there had been very little change in his condition. Dr. Horine saw him twice during his fatal illness, once in February and once in March. On the occasion of the February visit he was delirious, and when he saw him in March he was unconscious. It was Dr. Horine's opinion that, from conditions found by him in September, 1929, the testator could not have had testamentary capacity on December 9, 1929.

Dr. Morris W. Weiss, associate of Dr. Horine, stated that generalized arteriosclerosis implied hardening of brain arteries reasonably calculated to produce brain disturbances, and he expressed the opinion, based upon his physical examination, that the testator lacked testamentary capacity on December 9, 1929.

On the other hand, forty-two witnesses testified that the testator had testamentary capacity at the time the will in contest was executed. It would unduly lengthen this opinion to do more than briefly summarize this evidence. Most of these witnesses were leading business and professional men of Louisville who had known the testator for many years and had almost daily contact with him. Many of them had business transactions with him immediately before and after the execution of the will, and, without exception, they testified that the testator, up to the time of his fatal illness, possessed a keen and vigorous mind and had testamentary capacity. Their opinions were based upon actual observation, and they testified to factual conditions from which testamentary capacity could be inferred. Six physicians who were acquainted with the testator, four of whom had examined him shortly before the will was executed, testified that he was of sound mind. Another, in answer to the hypothetical question, testified to the same effect.

James P. Whallen was 76 years of age when he died. He was not physically strong during the last

year or two of his life, but the evidence, without substantial contradiction, established his mental soundness up to a few weeks before his death. He had an alert mind, and was a man of unusual business acumen. His intimate friends and close business associates, without exception, not only stated that he had sufficient mental capacity to make a will in December, 1929, but that he displayed in conversation and in business transactions all of the skill and intelligence which had characterized his business life and enabled him to accumulate and conserve a large estate.

The verdict of the jury finding the paper in contest to be the last will and testament of James P. Whallen was fully warranted by the evidence, and, since the record discloses no error in the trial of the case, it is our conclusion that it was an abuse of discretion by the trial court to set aside that verdict.

The judgment is reversed, with directions to reinstate the verdict sustaining the will and to render judgment thereon.