**COMMONWEALTH of Kentucky, DEPARTMENT OF HIGHWAYS, Appellant,**

v.

**CITIZENS ICE & FUEL COMPANY, Appellee.**

Court of Appeals of Kentucky.

Feb. 15, 1963.

**114**

John B. Breckinridge, Atty. Gen., H. D. Reed, Jr., Asst. Atty. Gen., Paul E. Hunley, Dept. of Highways, for appellant.

Glen H. Stephens, W. L. Rose, Williamsburg, for appellee.

PALMORE, Judge.

This is a highway condemnation case. The Commonwealth's appeals in the two Mahan cases (tracts 78 and 78–B) having been dismissed on motion, our consideration here is limited to the Citizens Ice and Fuel Company case (tract 78–A).

Appropriately, appellee cites Whallen's Ex'rs v. Moore, 1933, 248 Ky. 348, 58 S.W. 2d 601, 602, for a correct statement of the principles applicable to the granting of a new trial. Omitting citations therein, the complete quotation is as follows:

> "The trial court is vested with a large discretion when passing upon a motion for a new trial, and, unless that discretion is abused, this court will not interfere, and it is more reluctant to set aside a judgment granting, than one refusing, a new trial. * * * But, where the verdict is warranted by the evidence and no error appears in the record, an order granting a new trial on erroneous grounds will not be sustained."

In this case the granting of a new trial did not rest upon error committed in the course of the first trial, but upon the alleged insufficiency of the evidence to support the smallness of compensation and damages awarded by the jury.

When there have been errors or defects in the course of a trial, there may be good reason to place special reliance on the discretion of the trial court in determining whether they had a substantial and prejudicial effect. But the question of whether "the verdict is warranted by the evidence" is not, in our opinion, a matter of discretion. It must be weighed by the trial court according to the same standards by which it would be weighed in this court. If the verdict would be sustained on appeal it cannot be set aside in the trial court. We look, therefore, to the sufficiency of the evidence to warrant the first verdict in this case.

Two valuation witnesses for the state appraised the right-of-way strip taken at $432 and $540, respectively. Four witnesses for the ice company valued it at $2000 to $3000, $4000, $5000, and $2500, respectively. The jury awarded $900. (At the second trial the verdict on this item was $1200.) Although the state's appraisers did not reside or do business in Corbin, there is no serious doubt that they qualified as expert witnesses. Whether their testimony was entitled to more or less weight than that of their adversary witnesses was strictly for the jury to say. As to the bases of their estimates, though but two isolated instances of other sales in the area of Corbin were cited specifically, the transcript shows (particularly in the testimony of the witness Kinman) that these two comparisons were sifted out as the best examples from a review of several sales of various types of property, and that adjustments were made to compensate for dissimilarities. As suggested in Stewart v. Commonwealth, Ky.1960, 337 S.W.2d 880, exact comparability of properties is a rare circumstance at best. As a matter of fact, if the witness is qualified as an expert on real estate valuation and values, we do not think it must always be an absolute *sine qua non* to either the admissibility or

sufficiency of his opinion that it be supported by comparable sales. It sometimes occurs that there simply are not any comparable sales to be found, and in this case the testimony of witnesses for the ice company reveals that their own opinions suffered from the same dearth of comparative support as did that of the state's witnesses.

■ Unlike the lay witness, an expert valuation witness need not be (and frequently is not) acquainted first hand with real estate values in the vicinity of the property to which his testimony refers. A person skilled in the techniques of professional appraisal work has no trouble learning property values in any community to which he may be called. The admissibility and weight of his opinion depend on his background and experience and how thorough an investigation he has made. Once he has established his professional qualifications and testifies that he has made a sufficient study of the real estate market in the community to form an opinion as to the market value of the property in question, and has viewed the property, then we think his opinion will support a verdict unless it is patently extravagant or unless in the process of examination or cross-examination it is shown that in fact he has not made a sufficient canvass of the local market to justify an opinion, or that he has not seen the property.

■ Each of the two professional appraisers for the state testified that he had made a study or investigation of real estate values in the vicinity of the property under discussion, had examined it, and had an opinion as to its market value. Each had appraised property in Corbin on one or more previous occasions. Each had reviewed a list of sales prepared by other personnel of the Highway Department,[1] and both were of the opinion that the two sales hereinbefore mentioned were sufficiently comparable as further and specific support for their estimates. Under these circumstances, it is our conclusion that their testimony had enough probative value to support the verdict of but $900 for the right-of-way strip.

■ The two witnesses for the state testified that there would be no damage to the remaining property except by reason of the increased elevation of the highway, varying from 2½ feet at the north end to 1½ feet at the south end of the ice plant lot. Each of them equated the resulting loss in market value in terms of what it would cost to fill in and contour the property up to grade level. The witness Workman estimated this cost at $1000, and the witness Kinman at $1200. Neither of them was cross-examined as to exactly how he computed this cost. The jury awarded $1500. (At the second trial the verdict on this item was $3700.)

One of the witnesses for the landowner was a general contractor, who estimated the cost of filling at $2500 for 1,000 cubic yards of dirt. It is to be noted, however, that these figures were made up in contemplation of leveling the entire area between the right-of-way and the ice plant building, whereas the witnesses for the state based their testimony on a partial fill, sufficient only to eliminate the abrupt incline to the new level of the roadway. Moreover, it is undisputed that a substantial portion of the area between the building and the road was already slightly lower than the level of the road before its reconstruction. When these differences are considered, the cleavage between the conflicting estimates does not appear to be great, and in the absence of cross-examination designed to probe the manner in which the two witnesses for the state arrived at their figures we do not think it can properly be assumed that they did not know what they were talking about. On the contrary, it is to be presumed that experienced state highway department appraisers working exclusively on problems of

---

1. This information was elicited on cross-examination by counsel for the landowner. See Stewart v. Commonwealth, Ky.1960, 337 S.W.2d 880, 885, as to admissibility of appraisals based on hearsay information pertaining to sale prices.

this very nature would be well qualified to provide this type of estimate. Therefore, it is our opinion that their testimony had sufficient probative value to sustain the verdict on this item as well.

Witnesses for the ice company gave estimates of damage to the remainder running as high as $50,000 or more, resulting, in their opinions, from two salient circumstances in addition to the cost-of-fill item discussed above. One of these was that it would be necessary to fill the area from the road to the building, which in turn would require a costly project in the form of elevating the loading platforms at the front end of the ice plant. The other was that the increased proximity of the right-of-way line, and especially the presence of proposed rampways entering down into the property from the road, would so reduce the operating room for trucks and trailers in front of the ice plant that its efficiency and value would be substantially impaired. In the opinion of the state's witnesses neither of these two possibilities would result, and again we must say that the jurors were authorized by the evidence to adopt that viewpoint if they saw fit to do so, which apparently they did.

The theory of the highway department, as we understand the record, was that if the ice company preferred not to have the two ramps it could lay a drain pipe in the ditch and fill in the space between them, making in effect one continuous ramp from one end to the other in front of the ice plant building. Certainly if this were done there would be no necessity to raise the loading platforms, nor would the presence of the ramp or ramps limit the operating space between the road and the ice plant.

In granting a new trial the court considered the problem of maintaining the proposed ramps, and was of the opinion that the evidence in that respect was unsatisfactory. It was, in fact, non-existent. As a matter of law, the state would not be obliged to maintain them, but whatever possibilities of future trouble and expense may flow from that circumstance were up to the landowner to develop in the course of the trial. Its failure to do so did not justify consideration of the question by the trial court on its own initiative.

The remaining item in the verdict was $100 awarded for a temporary easement. The same amount was awarded at the second trial, and it is not in dispute.

The judgment is reversed with directions that the second verdict be set aside, the first verdict reinstated, and a new judgment entered accordingly.