COMMONWEALTH of Kentucky, DEPART-
MENT OF FINANCE, ex rel. DEPART-
MENT OF FISH & WILDLIFE RESOURC-
ES, Appellant,

v.

Mabel DAY, Appellee.

Court of Appeals of Kentucky.

June 15, 1973.

As Modified on Denial of Rehearing

Sept. 28, 1973.

G. E. Reams, Harlan, for appellant.

James S. Greene, Jr., Greene & Forester, Harlan, for appellee.

CULLEN, Commissioner.

The Commonwealth of Kentucky, Department of Finance, ex rel. Department of Fish and Wildlife Resources, appeals from a judgment awarding $35,520 to Mable Day as damages in the condemnation by the appellant of a flowage easement over lands of the appellee bordering on Cranks Creek Lake.

In 1964 the Department of Fish and Wildlife Resources created Cranks Creek Lake by erecting a dam across Cranks Creek and impounding its waters. The lake was created for recreational purposes. The normal level of the lake was at an elevation of 1430 feet. The department acquired ownership of the land covered by the lake at that level. In 1966, in a period of heavy rainfall, the water level of the lake rose substantially and land in private ownership bordering the lake was overflowed. Following that experience, the department made surveys designed toward avoiding future overflow problems, and as a result of those surveys changes were made in 1971 in the dam structures, so as to reduce the normal level of the lake to 1420 feet and to accelerate the flow of water out of the lake in times of heavy rainfall. While these changes were calculated to prevent overflow of bordering lands un-

der normal conditions the department anticipated that extraordinary rainfalls on rare occasions might cause the lake to overflow bordering lands up to a level as high as 1440 feet. Therefore, the department undertook to acquire flowage easements over the bordering lands up to the contour level of 1440 feet. The department was unable to negotiate a purchase from Mrs. Day, so the instant condemnation suit was brought.

There is a major argument over the question of just what rights the flowage easement was intended to embrace, so it will be necessary for us to discuss that question in some detail.

In the petition for condemnation filed in the county court it was alleged that a flowage easement was needed over the lands of Mrs. Day and that:

> "The flowage easements are to be taken for the exclusive use of the general public as a recreational facility, namely: *camping,* fishing, boating, bathing and related recreational activities; the proposed use as a *recreational park* will serve the public convenience and necessity by providing for the public a place for water sports and other recreational activities allied with and related to the use of a small body of fresh water. A copy of Official Order No. 71–269 and Exhibit A attached hereto are filed herewith and as a part of this petition * * *" (our emphasis)

The attached exhibits referred to acquiring land for "flowage easement rights only" but did not define such rights.

The petition further alleged, in paragraph (4):

> "Further that it is necessary for the plaintiff to acquire the permanent right to overflow, flood and/or cover from time to time, the hereinafter described lands with the flood, slack, or backwater created by or which shall be resulted from the erection and operation of Cranks Creek Dam across Cranks Creek in Harlan County, Kentucky; the right to enter upon said lands, from time to time, and clear, destroy or dispose of any trees, bushes or other natural growth and any obstruction, accumulation, trash, filth or other thing which would in any way interfere with navigation during any flood or period of high water or flood control or tend to render inaccessible, unsafe, or unsanitary either the lake created by said dam or the margin thereof; together with the right to prevent the draining or dumping into said lake of any refuse, sewage, or other material, which might tend to pollute it."

Finally, at a third point in the petition, this statement was made:

> "Plaintiff further says that it seeks to condemn hereby only a flowage easement over the lands as described herein."

The county court judgment awarded to the condemnor the right to "take possession of the lands described in the petition * * * for flowage easements for the purposes set forth in the petition."

The judgment in the circuit court, after trial of the case on the appeal to that court, contained a similar provision, that the master commissioner convey to the condemnor "a permanent flowage easement, for the purposes set forth in the condemnation petition * * *". However, the judgment in its final paragraph, in stating that the "easement shall grant to" the condemnor specified rights, repeated verbatim the description of rights set forth in paragraph (4) of the petition, hereinbefore quoted, which made no mention of *camping, recreational park* use, etc.

Throughout the trial in the circuit court, the trial judge controlled the admission of evidence on the basis of his interpretation of the petition as seeking easement rights

that included *camping, recreational park* use, etc. The *instructions* did not define what rights were being acquired, but merely referred to the "permanent rights of easement to overflow said parcels of land." No objection was made to the instructions on the ground of a failure to define the extent of the easement rights, and no instruction was offered making such a definition.

Although the instructions did not define the extent of the rights, the jury had before it the evidence of appraisal witnesses, ruled by the trial court to be admissible, estimating the "after" value on the basis that *camping* rights, etc., were being acquired, and there had been read to the jury, several times, the language of the petition with reference to the rights sought to be acquired, including the initial language referring to *camping* rights, etc. It appears, therefore, that the jury, in making its award of damages, considered that the easement included the camping rights, etc.

■ This is an important matter, because obviously the "after" value of the land depended upon the extent of the uses to which it was to be subjected, which involved not only the kinds of uses to be exercised but the probable frequency of their exercise. If only pure *flowage* rights, as defined in paragraph (4) of the petition, were being acquired, the damages awarded might possibly be found excessive, on the ground that there was evidence requiring the conclusion that the probable frequency of flooding would not be enough to sustain the jury's apparent finding that the easement took substantially all of the value of the land. But there was no attempt to offer any evidence on the probable frequency of the use of the land for camping, park purposes, etc. (which evidence admittedly would be difficult to produce), so the jury was entitled to believe, we think, that the

latter uses probably would be of such frequency that those uses, coupled with pure flowage rights, would effectively destroy any value of the land to the landowner.

■ We think it was incumbent on the condemnor, when it first became apparent in the trial that there was an issue as to the extent of the rights being condemned, to ask that the petition be amended to eliminate any claim of camping rights, etc.[1] At the very least there should have been a request for instructions confining the rights to those listed in paragraph (4) of the petition. Not having taken either of those steps, the condemnor is not in a position to complain in this court that the jury awarded damages on an erroneous conception of what rights were being sought.

■ The fact that the jury may have awarded damages on the basis of all the rights mentioned in the petition, whereas the *judgment* granted only the rights mentioned in paragraph (4) of the petition, is a regrettable circumstance, but one which this court cannot remedy under this record. Any error in the provision of the judgment should have been called to the attention of the trial court by a motion to amend or correct the judgment. Absent such a motion, we will not undertake to direct an amendment or correction. Appellant's motion for a new trial was addressed only to the proposition that the *verdict* was excessive because of erroneous instructions with respect to the extent of rights being taken, wherefore a new trial should be granted, and it was not calculated to suggest to the trial court that the appellant desired that the *judgment* be amended. This marks the distinction from Commonwealth, Department of Highways v. Milby-Farmer, Inc., Ky., 494 S.W.2d 88, where the appellant's sole desire was to be relieved from an erroneous verdict, and his motion was inappropriate only in that it asked that

---

1. That was done in Commonwealth, Dept. of Finance, ex rel. Department of Fish & Wildlife Resources v. Browning, Ky., 499 S.W.2d 592 (this day decided).

the relief be by granting a mistrial rather than by a direction to the jury to correct the verdict.

The contention of the appellant that the damages are excessive rests on the basis that the "after" value was fixed too low in that only pure flowage rights were being taken and the evidence showed that there would be only rare instances of flooding, so that the landowners would continue to have substantial use of the land. Since, as hereinbefore explained, the case was tried and submitted on the theory that camping rights, etc., also were being taken, the basis for the argument of excessive damages fails.

The appellant argues strongly that the trial court committed prejudicial error in refusing to permit an *appraisal* witness, one Crabtree, to testify as to the frequency with which flooding of the land in question might occur. An avowal was made that his testimony would be that the land probably would not flood more than nine times in the next 100 years.

Crabtree stated, in his avowal, that his estimation of the frequency of flooding was "From information furnished me by the Hydraulic Division of Engineers and from my study of other projects that I have appraised in flowage easement projects," and that he had found in the past that the "information * * * that was furnished * * * was reliable." He did not undertake to describe the nature of his "study" of other projects.

■ Since the estimate as to frequency of flowage was based solely on hearsay, it was necessary, to make the testimony admissible, to show that Crabtree was an *expert* in this field. Cf. Stewart v. Commonwealth, Dept. of Highways, Ky., 337 S.W. 2d 880. It is patent from the record that Crabtree was not an expert in the field of rainfalls and water levels, merely having made inquiries of experts and carried on some "study" of undisclosed extent. He did not show the required degree of back-

ground, experience and thoroughness of investigation to be qualified as an expert in the subject at issue. Cf. Commonwealth, Dept. of Highways v. Citizens Ice & Fuel Co., Ky., 365 S.W.2d 113; Contractors Service & Supply Co. v. Chism, Ky., 316 S.W.2d 840.

■ We conclude that the trial court properly excluded Crabtree's offered testimony as to the probable frequency of flooding. It is unfortunate that competent evidence on that point was not produced since it would have been of relevance on the issue of the extent to which the easement would be expected to interfere with the landowner's use. See United States v. 2,648.31 Acres of Land, 4 Cir., 218 F.2d 518. Its relevance in the instant case was made less important, however, by the fact that the easement was considered as covering camping, etc., in addition to flooding.

■ The appellant's next contention is that the trial court should have sustained a challenge for cause of certain jurors, made on the ground that they had sat on juries in other condemnation suits during the same term of court, involving the same project. Under Commonwealth v. Hall, Ky., 258 S.W.2d 479, and United Fuel Gas Co. v. Hieneman, Ky., 272 S.W.2d 813, this contention must fail.

■ Appellant's next two arguments relate to the refusal of the trial court to admit evidence as to prices paid for two flowage easements for Cranks Creek Lake *conveyed* to the appellant by landowners. This evidence properly was rejected, because a conveyance made under threat of condemnation is not truly voluntary. See Commonwealth, Dept. of Highways v. Slusher, Ky., 371 S.W.2d 851; Stewart v. Commonwealth, Ky., 337 S.W.2d 880; Nichols on Eminent Domain, 2d Ed., Vol. 5, sec. 21.33.

■ Complaint is made of the instructions, in that they directed the jury to fix the "before" value as of the time immedi-

ately preceding the original construction of the dam (in 1964) rather than immediately before the taking. This was error, as held in Usher and Gardner, Inc. v. Mayfield Ind. Bd. of Ed., Ky., 461 S.W.2d 560, but likewise it was not prejudicial, as also was held in *Usher*, because there was no showing of any change in property values in the interim period attributable to the project. Cf. Commonwealth, Dept. of Highways, v. Tackett, Ky., 498 S.W.2d 630 (decided June 15, 1973). Furthermore, had the 1970 appraisals been used as the before criteria it would have been detrimental to the Commonwealth.

 Complaint further is made that the instructions "did not tell the jury for what uses and purposes the flowage easement was sought and did not define what is meant by a flowage easement." The appellant is not entitled to raise this claim of error because appellant did not offer a proper instruction or make an appropriate objection.

Finally, the appellant maintains that error occurred by reason of appellee's contending throughout the trial that the easement would include camping rights, etc. This contention is answered in the discussion at the outset of this opinion. Further, it is to be noted that the appellant's appraisal witness, Crabtree, told the jury that it was his understanding that the flowage easement was being taken "for the exclusive use of the general public as a recreational facility, camping, fishing, boating and other related activities connected with Cranks Creek Dam." And appellant's counsel read to the jury all of the allegations of the petition with reference to the purpose of the easement, including the references to camping, etc.

The judgment is affirmed.

PALMORE, C. J., and MILLIKEN, OSBORNE, REED, STEINFELD and STEPHENSON, JJ., sitting.

All concur.