## City National Bank v. Wallace.

(Decided February 20, 1923.)

### Appeal from Trigg Circuit Court.

1. Appeal and Error—New Trial.—In a motion for a new trial, the phrase, "that a judgment is against or contrary to law," is too general to raise any error of law occurring at the trial.
2. Appeal and Error—Exceptions.—In a law and facts case tried by the court in the absence of an exception to the conclusions of law, such errors occurring at the trial cannot be considered.
3. Appeal and Error—Setting Aside Verdict.—In an ordinary action tried by the court where separate findings of law and fact are filed and no exceptions taken to the conclusions of law, the judgment of the court will be treated as the verdict of a properly instructed jury and will not be set aside unless flagrantly and palpably against the evidence.

4. **Bills and Notes — Evidence—Notice—Infirmity.—Evidence** examined and held sufficient to sustain the judgment of the court to the effect that a certain negotiable instrument executed as the consideration for the purchase of a tract of land was procured by fraud, and that it was given to the agents of a corporation to whom it was payable to hold and not to be delivered until the obligor decided whether or not he would purchase the land; and was by said agents negotiated in violation of said agreement, and that at the time of such negotiation the purchaser had notice of such infirmities.

WHEELER & HUGHES for appellant.

TRIMBLE & BELL for appellee.

OPINION OF THE COURT BY JUDGE McCANDLESS—Affirming.

The City National Bank filed suit in the Trigg circuit court against Alec Wallace on a note for $4,000.00, executed and endorsed by him and negotiated before maturity to it by the Daniel-Hayes Land Company.

Wallace answered, pleading fraud in the execution of the note and a conditional delivery of it, and alleging that the bank had notice of these defects at the time of its negotiation and purchase. The issues were completed by appropriate pleadings.

Upon the trial a jury was waived and the law and facts submitted to the court, who, after hearing the evidence, returned judgment for the defendant, and thereupon the plaintiff entered motion for separate findings of law and fact. It also filed motions and grounds for a new trial.

The court filed separate findings of law and fact but no exceptions were taken to either, and the only grounds set out in the motion for a new trial were, "Because the judgment of the court was not sustained by sufficient evidence and is contrary to both the evidence and the law."

It is settled that a statement in a motion for a new trial "that a judgment is against or contrary to law" is too general, and will not raise any error of law occurring at the trial. G. L. v. F. P. Ins. Co., 191 Ky. 666; A. C. Co. v. N. C. Co., 122 S. W. 840; C. T. S. Co. v. Hunt, 163 Ky. 120.

Aside from that, in the absence of an exception to the court's conclusions of law, the same result obtains. American Aid Society v. Bronner, 91 Ky. 406. Further, where the law and facts are submitted to the court and

no exception filed to the conclusion of law the court's findings of fact are to be treated as the verdict of a properly instructed jury, and will not be disturbed unless palpably and flagrantly against the weight of the evidence. Stull v. U. S. H. & A. Co., 115 S. W. 234; Bell v. Wood, 87 Ky. 56; Kahn v. Rogers, etc., 19 Rep. 1807; C. & O. v. Williams, 156 Ky. 116.

The evidence of the appellee is to the effect that two agents of the Daniel Hayes Land Company, viz., Pickerell and Perkins, visited him at his home in Trigg county and endeavored to sell him some land located in the state of California, belonging to that company which it was developing. They represented the company to be worth several million dollars, and that Messrs. Brainerd Brothers & Pickerell, of St. Louis, were its agents; that the lands in question were very valuable, and if developed would produce fruit, alfalfa and other profitable crops; that other lands of like character in that vicinity were selling for $400.00 an acre and up, when developed.

They had a regular printed form of contract of sale at $200.00 an acre, the terms of which were the payment of one-half cash with deferred purchase money notes for the remainder, it being provided that the purchaser might inspect the lands selected by him and if not pleased with the selection that he could exchange same for any other unsold lands owned by the company, or if this was not agreeable he had the option of cancelling the contract and having his money refunded; it was also provided that the contract was not to be affected by any oral promise, agreement or representation not embodied therein, and plaintiff knew of this.

They further proposed to pay appellant's way to California for him to examine the land and to sell him as much as he desired on the above terms, except they would take from his note for the first payment in lieu of cash. Appellee declined to do this and they suggested to him that Mr. Utterback, president of the City National Bank of Paducah, had been out to California and examined the lands and purchased a tract of it, and showed to him a telegram of flattering nature in reference to the lands, this purporting to be signed by Utterback, and asked him to consult Mr. Utterback in reference to it. Accordingly on the 4th of March he called upon Mr. Utterback for that purpose.

The Daniel Hayes Land Company had an office in the City National Bank building, and one of its agents, Mr. Morey, introduced appellee to Mr. Utterback, saying "Mr. Wallace wants to discuss the California proposition." Appellee went over the matter with Mr. Utterback, telling him of the proposition made by the agents and asking him in reference to the land. Mr. Utterback told him that he had been out and examined the land and had a favorable impression of it, and that he had purchased some of it. He had investigated the Daniel Hayes Land Company, and that it was worth two or three million dollars, and was perfectly good for its contract.

He had also investigated Brainerd Brothers & Pickerell and they were all right. He further illustrated the fairness of the company by describing how it had returned a contract to some old ladies, and upon the appellee telling him of the offer made him indicated that the parties would keep it. It also appears that Utterback knew the standard form of contract.

Appellee returned home and the agents visited him again. He informed them that he did not wish to visit California even if his expenses were paid. They then proposed for him to sign the purchase contract and note and agreed to hold same until such time as he could decide what he wanted to do; that the papers would not be delivered or confirmed until he said so, and if he decided to not purchase they would return them to him. After some insistence he executed the papers with that understanding. Instead of holding the papers the agents sent the contract to the company for its approval and discounted the note at plaintiff bank and accepted in lieu thereof a certificate of time deposit dated March 25, 1919, and due twelve months after date, Mr. Utterback conducting the negotiations for the bank.

The company at once approved the written contract of sale and returned it to Wallace. When he discovered the agents had not held the contract as they had agreed he decided not to take the land and endeavored to secure the return of his note. About April 1st he went to see Utterback, who spoke to him encouragingly, but did not tell him that he had discounted the note. He then went to St. Louis to see Brainerd Brothers, who also spoke encouragingly, but told him the note was in Paducah. He again visited Mr. Utterback, and had some correspondence with him during the spring and summer. Some time in June Mr. Utterback informed him that he had

discounted the note, but said that he did it as an ordinary business transaction.

The certificate of deposit was collected through the regular channels at maturity, and it does not appear that it was ever discounted before maturity by the Daniel Hayes Land Company, but Wallace did not learn of its existence until after it was collected.

It further appears that at the time appellee executed the note, the Daniel Hayes Land Company was indebted over a million dollars and insolvent, and that it has since gone into bankruptcy; that the land was wild land and was worth less than one-half the purchase price.

On the other hand, Mr. Utterback denies *in toto* the conversation with appellee on March 4, 1919, or that he ever had any conversation with him before the bank purchased the note. He did go to California and saw the land and was favorably impressed with it, but put a condition in his contract and later canceled it. He thought the land was well worth $200.00 an acre as it was, and if developed it would be very valuable. He in good faith negotiated the note for a valuable consideration; it bore 6% interest and he discounted it 2%, making the bank realize 8% on its investment. He supposed the note was for land but had no notice of any agreement or limitation of any kind, and there was nothing to cause him to think there was any agreement attached to it. He knew Brainerd Brothers & Pickerell and they were good, high class business men; he had also seen the rating given the Daniel Hayes Land Company and considered them good. His first conversation with appellee was on April 1st at which time he was introduced to him by Mr. Craig. Appellee did not complain in that conversation, and he did not think it necessary to tell him about the certificate of deposit. They discussed the California lands in the presence of Mr. Craig, but not the terms or conditions of the Wallace purchase.

After he discovered appellee's condition he tried to help him with the Daniel Hayes Land Company, but not on account of any interest he had in the matter. That he had no connection whatever with the land company, and was entirely disinterested, and what he did for Wallace was a matter of accommodation to him. Such is the evidence of the principals.

Other evidence was introduced by each tending to corroborate his respective contention. One of the agents of the Daniel Hayes Land Company, Mr. Morey, testi-

fied as to collateral matters, and so far as it went his tes-
timony corroborates appellee, but he did not hear the con-
versation.    Pickerell and Perkins did not testify, but
Craig corroborates Utterback.

It will thus be seen that the evidence is conflicting,
and as suggested above, in cases of this character the
trial judge is supposed to know the witnesses and to pass
upon the credibility as well as the weight of the evidence.
We cannot say that his judgment is flagrantly or palpably
against the weight of the evidence.

Judgment is affirmed.