## Grigsby v. Grigsby et al.

(Decided June 13, 1933.)

728

JAMES & HOBSON and O. C. HALL for appellants.

H. H. SMITH and B. F. COMBS for appellees.

OPINION OF THE COURT BY JUDGE RICHARDSON—Reversing.

Andrew Grigbsy, a married man, was a member of the United States Army for a period of 25 or 30 years. In August, 1915, he and his wife, Zadie Grigsby on a petition filed as authorized by section 2071, Ky. Statutes, in the Knott circuit court, adopted as their son, Franklin Turner, the illegitimate son of Andrew Grigsby, by Catherine Turner. Andrew Grigsby continued a member of the United States Army, his wife residing in Knott county. Two years next prior to his death in February, 1923, he returned from the army, and he and his wife occupied their home in Knott county, until the will, which is the subject of this litigation, was executed and published by him. At the time of the adoption of Franklin Turner, and continuously thereafter until the death of Andrew Grigsby, Franklin lived in Wayland, "on right Beaver," on the opposite side of the mountain from where Andrew and his wife resided. Com-

munication between the two settlements was impracticable and infrequent. Andrew Grigsby died on the 19th day of February, 1923, leaving his adopted son and widow, surviving him. He was 50 years of age at the time. Elijah Grigsby, a brother of Andrew was 65 years of age, and resided about two miles from the home of Andrew. Andrew was tubercular, and for two or three months next before his death, he was confined to his home, and the greater portion of this time to his bed, and required constant attention. A short time before he was confined to his home, he went to the home of his adopted son to induce him to come to his (Andrew's) home, and bring his family and live with him, stating to the son at the time that he would erect a residence for him to occupy. The son agreed to do so. After Andrew returned home and in pursuance to his promise to Franklin, he engaged a sawmill to manufacture lumber, and carpenters to erect the residence for Franklin to occupy. For two months next before Andrew executed his will, Elijah Grigsby remained continuously at Andrew's home and assisted Andrew's wife and others to wait upon him. During this period, Andrew caused Elijah to go to the home of the adopted son and urge him to come to the home of Andrew and live with him. Within a few days thereafter the son came and remained for about a week, when he became homesick and returned to his own home where he claims his wife was confined in childbirth and he was thereby detained and prevented from returning to the home of Andrew. About nineteen days before the death of Andrew, Elijah, at the request of Andrew, went to Hindman, the county seat of Knott county, and induced H. H. Smith, an attorney at law residing at Hindman and Dr. J. W. Duke, to go to the home of Andrew and prepare a will for him, which they did. On arriving at Andrew's home, they found Elijah, his daughter, his father, and the wife of Andrew in the room with Andrew. After engaging in promiscuous conversation for a short time, all parties were excluded from the room occupied by Andrew, except Smith and Duke, when Andrew informed them he desired his will prepared. He detailed to them its intended provisions. Before the will was completed, a number of the parties, if not all, who had been excluded from the room, returned and remained present during the preparation and execution of the will. The will was prepared by Smith, and, when read to Andrew, it was

not satisfactory to him. It was destroyed and a second will prepared. It was signed twice by Andrew, and witnessed by J. W. Duke, H. H. Smith, and May Grigsby. Elijah Grigsby states that, at the time Andrew directed him to go to Smith and Duke and request them to come to his home and write the will, Andrew stated to him that he (Elijah) would be surprised at what was in it, and assigned as his reason for wanting Smith and Duke, that they were members of the same fraternal order as himself and that he wanted the will "strong." Andrew Grigsby, at the time of the execution of his will, owned two farms in Knott county, on Ball's fork, above the mouth of Trace fork; one consisting of 300 acres more or less, and the other containing 100 acres. The first tract was devised to Zadie Grigsby for life, and after her death to Elijah Grigsby, his wife, Jennie Grigsby, and their heirs, to be theirs absolutely and in fee at the death of Zadie Grigsby. The 100-acre tract was devised to Zadie Grigsby with the power to sell and dispose of it in her lifetime, but, in the event she should not sell or dispose of it, it was provided that it should belong to Elijah Grigsby and his wife, Jennie Grigsby, and their heirs. To Franklin Grigsby, his adopted son, he devised $1 as his full share of all of his estate and personal property or "all that he desired him to have of his estate." The will was probated by the Knott county court. An appeal was taken from the court of probation to the Knott circuit court, where a trial was had, and a verdict was rendered revoking the will. From this point issues are vigorously presented and strenuously contested.

Elijah Grigsby and Jennie Grigsby filed motion for a new trial, setting out six grounds: (a) Errors in the instructions given; (b) error in refusing instructions; (c) "irregularities which occurred in the proceedings of the trial which are of record and which were objected and excepted to at the time and which irregularities prevented the defendants and contestees from having a fair trial"; (d) the verdict of the jury is not sustained by the evidence but contrary to it, and so palpably so as to show it was the result of passion and prejudice; (e) "errors of law occurring at the trial which were objected and excepted to by the defendants and contestees at the time"; (f) newly discovered evidence which they were unable to discover and present by the exercise of reasonable diligence.

Considering the last first, the affidavit of Elijah Grigsby was filed in support of this ground, in which he charged collusion between Franklin (Turner) Grigsby and Zadie Grigsby and others to annul the will of Andrew Grigsby, and that on another trial the contestees will be able to prove by Adam Campbell that Andrew Grigsby was of sound mind and disposing memory at the time he made the will. No disclosure is made in the affidavit of the names of any witness by whom the charges therein preferred against Zadie and Frank Grigsby and others might be sustained. The anticipated testimony is merely cumulative.

"The general rule of law governing applications for new trials upon the ground of newly discovered evidence is: 1. That 'the names of the witnesses who have been discovered' must appear. 2. That the appellant has been vigilant in preparing his case for trial. 3. That the new facts were discovered after the trial, and would be important. 4. That the evidence discovered will tend to prove facts which were not directly in issue on the trial or were not then known, nor investigated by the proof. 5. That the new evidence is not merely cumulative." Price's Adm'r v. Thompson, 84 Ky. 219, 1 S. W. 408, 8 Ky. Law Rep. 201; Brady v. B. & B. Ice Co., 239 Ky. 170, 39 S. W. (2d) 252.

A mere statement of this rule is sufficient for the denial of a new trial on the ground of newly discovered evidence as it is set forth in the affidavit of Elijah Grigsby.

Considering the other grounds in the order named, it is sufficient to say that the bill of exceptions discloses that Elijah Grigsby and Jennie Grigsby neither offered an instruction nor objected to those given by the court. The accepted rule of practice is that it is not the duty of the trial court to prepare and give instructions in civil cases, but it is the duty of the parties to prepare and offer instructions presenting his theory of the case, but, if the court on his own motion gives instructions he conceives to be incorrect or improper, it is his duty to object to the instructions given and save an exception to them. This rule is so familiar it is scarcely necessary to cite an authority to sustain it. However, see Frankfort Elevator Coal Company v. Williamson, 191 Ky. 674, 231 S. W. 241; Ramey v. Ironton Lumber Company, 166 Ky. 295, 179 S. W. 207; Pacific Mutual

Life Ins. Co. v. Cash, 224 Ky. 292, 6 S. W. (2d) 239. Adhering to this rule, it is plain that they were not entitled to a new trial because of the given instructions. The grounds (c) and (e) are too general and indefinite to raise any error of law occurring at the trial. Grove Lodge v. Fid. Phoenix Ins. Co., 191 Ky. 666, 231 S. W. 215; American Credit-Indemnity Co. v. National Clothing Co. (Ky.) 122 S. W. 840; Charles Taylor & Sons Co. v. Hunt, 163 Ky. 120, 173 S. W. 333, and City National Bank v. Wallace, 197 Ky. 823, 248 S. W. 203. In order for the trial court or this court to know to what ruling of the court the contestees thereby refer, it is necessary to ransack the record and speculate as to the error complained of, neither of which is the duty of the court. American Mut. Aid Soc. v. Bronger, 91 Ky. 406, 15 S. W. 1118, 12 Ky. Law Rep. 971.

This leaves for consideration ground (d), the verdict is not sustained by the evidence. Zadie Grigsby was absent at the time of the trial. A continuance was requested by the contestant on that ground. She was a contestee, and, as such, filed an answer or response to the statement setting forth the grounds of contest. An affidavit in support of the motion for a continuance contained a copy of her answer and detailed the facts to which she would testify, if present as a witness. At the conclusion of the evidence in behalf of the contestant he offered to read this affidavit. Contestees objected because an attachment had been issued for Zadie Grigsby but not returned. On the objection of the contestees the court declined to permit the affidavit to be read at that time. At the conclusion of all the evidence the contestant renewed his motion to read the affidavit for continuance as the testimony of Zadie Grigsby. The contestees again objected to its reading. The court offered to set aside the swearing of the jury and continue the cause, on motion of the contestees if they desired it. Thereupon the contestees consented to the reading of the affidavit as the testimony of Zadie Grgisby, and it was read to the jury. Respecting it, the court admonished the jury to consider and give it the same weight as if she were present in court and testifying.

The court gave to the jury the instructions on the subject of mental unsoundness and undue influence which were approved in Brewer v. Brewer, 154 Ky. 662, 159 S. W. 540, Watson's Ex'r v. Watson, 137 Ky. 25,

121 S. W. 626, Wood v. Rigg, 152 Ky. 242, 153 S. W. 214, and in many later cases.

It will be observed that it is our view that the only ground which the court could properly consider in granting the new trial was the insufficiency of the evidence or that the verdict was palpably against the weight of the evidence. The statement of Zadie Grigsby set forth in the affidavit for continuance and read to the jury as her testimony establishes the fact that previous to his death Andrew Grigsby had so used morphine and had become under the influence of it to such an extent that he was easily persuaded; that when he would get out of it he would do almost anything to get more; that she gave to him morphine until he had become an addict; that she, together with Elijah Grigsby, persuaded the testator to execute the will as it was written; that for more than two months preceding his death he had become so effected with tuberculosis that he was weak in body and mind to such an extent that his mind was affected; that he was not conscious or did not know the import of his acts and was not in his right mind for some time prior to his death; that she had great influence over him and had insisted on and persuaded him to execute the will, devising to her and Elijah Grigsby his property; that it had always been the testator's intention to give the property to her and his adopted son, until she influenced him to the contrary; that having done so it gave her much trouble and worry, and she wanted it set aside.

The soundness of the mind of the testator, his use of morphine, and the influence exercised over him by the devisees, were the contested issues. Elijah Grigsby testified that he had had no conversation with the testator concerning the will, or its terms or provisions, nor in any manner induced him to make it, except the testator requested him to go and bring Smith and Dr. Duke, at which time the testator informed him, that he (Elijah) would be surprised what it contained when the will was written, and that he wanted Smith and Duke so it would be written "strong." With the testimony of Zadie Grigsby, the greater portion of it uncontradicted, the jury could not have returned but one verdict; i. e., one annulling it.

When considerating and disposing of a motion and the grounds for a new trial, the trial court is vested with a sound discretion, and, unless that discretion is

abused, this court will not interfere, and it is more reluctant to set aside a judgment granting, than one refusing, a new trial. Whallen's Ex'rs v. Moore, 248 Ky. 348, 58 S. W. (2d) 601, 604, and cases cited.

In granting or refusing it, the trial court is limited to the grounds shown by the record. As was stated in Whallen's Ex'rs. v. Moore:

"If the rule were otherwise, a new trial could always be granted regardless of the condition of the record, and the reviewing court would be without any means to determine whether or not the trial court had abused its discretion."

In Steinke v. North Vernon Lumber Company, 190 Ky. 231, 227 S. W. 274, 278, it was stated:

"Of course the trial court has a broad discretion in granting and refusing a new trial, but this discretion must not be abused, and it is abused by the granting of a new trial where no sufficient or sound reason exists or is shown therefor. Nor can it travel outside the record to find grounds for such new trial."

"Discretion" as here used "means a sound discretion, * * * exercised not arbitrarily or willfully, but with regard to what is right and equitable under the circumstances and the law, and directed by the reason and conscience of the judge to a just result." Langnes v. Green, 282 U. S. 531, 51 S. Ct. 243, 247, 75 L. Ed. 520. The court is without right under the guise of exercising a sound discretion to grant a new trial arbitrarily, capriciously, or as a matter of favor to the applicant. The granting it because the verdict is against the weight of the evidence rests on the proposition that the court had weighed the evidence in the judicial balance and found the greater weight or preponderance of the same against the jury's verdict. But this, in turn, is based on the proposition that there is evidence both pro and con to be weighed; that there is substantial evidence at each end of the balance to be weighed one against the other, and, when so considered, it is not sufficient to support the verdict, or the verdict is flagrantly or palpably against the evidence. Payne v. Reed (Mo. Sup.) 59 S. W. (2d) 43.

When these familiar principles are applied and the testimony of Zadie Grigsby is considered (it is largely

uncontradicted), it is apparent the trial court abused the discretion vested in him in the granting of the new trial. After the motion and grounds for a new trial were filed, the court took them under consideration from November 1, 1928, to the regular October term, 1929, when the motion was sustained and a new trial awarded. The contestant entered a motion to set aside the order granting it. In the order overruling the motion, the order granting the new trial was extended so as to read "that the judgment and verdict be set aside and held for naught and a new trial granted." The contestant entered a motion to set this order aside. His motion was overruled. The case was again tried before a jury in August, 1931, resulting in a verdict sustaining the will. The contestant entered a motion to set aside the last verdict and the judgment thereon, and to set aside the order of the October, 1929, term granting the contestees a new trial and to substitute in lieu of the verdict at the August, 1931, term, the verdict returned at the October, 1928, term. The court overruled these motions. Thereupon he filed motion and grounds for a new trial which were overruled. Exceptions were saved and an appeal granted to this court. The evidence heard at both trials is brought here by proper bills of exceptions. The verdict of the jury rendered at the October term, 1928, is warranted by the evidence, and, no other error appearing in the record, the new trial was improper. Mott v. Willman, 232 Ky. 594, 24 S. W. (2d) 311; Strode v. Strode, 194 Ky. 665, 240 S. W. 368, 27 A. L. R. 313; Whallen's Ex'rs v. Moore, supra. The court having thus erred, the contestant's motion to substitute the verdict returned at the October term, 1928, for the verdict of August, 1931, should have been sustained.

Criticism of the conduct of the trial judge, and arguments thereon, pro and con, are shown by the record. Our conclusions as herein expressed make it unnecessary to consider the respective contentions and arguments of the parties in regard to any other questions presented by the record or briefs.

Judgment reversed for proceedings consistent with this opinion.