## Ellis et al. v. Moss et al.

(Decided Dec. 11, 1934.)

M. C. ANDERSON for appellants.

HENRY F. TURNER and BEN B. MORRIS for appellees.

OPINION OF THE COURT BY CREAL, COMMISSIONER—
Affirming.

Mrs. J. L. White Newton, a resident of Ballard county, died on March 30, 1932. Following her death no will was found or produced, so an administrator was appointed to administer upon the estate and on September 17, 1932, made a final settlement with the judge of the Ballard county court. Mrs. Newton left no children but was survived by her husband, H. L. Newton, her father, T. J. Ellis, and by seven brothers and sisters, all of whom are parties to this action.

On September 28, 1932, T. J. Ellis died testate and his will was duly admitted to probate in the Ballard county court. Mrs. Lillie Moss, one of the parties to this action, was sole devisee and beneficiary under the will.

On January 16, 1933, the brothers and sisters of Mrs. J. L. White Newton, other than Mrs. Lillie Moss, produced in the county court of Ballard county a paper purporting to be the last will of Mrs. Newton and same was duly admitted to probate as such. Thereafter and within the time prescribed by law, Lillie Moss and H. L. Newton appealed from the order of the county court probating the instrument in question as the will of Mrs. Newton by filing in the circuit court a certified copy of the purported will accompanied by a petition and statement of appeal. The brothers and sisters of Mrs. Newton, other than Lillie Moss, were named as parties defendant in the petition, and summons which issued for them was duly executed.

In addition to the facts hereinbefore recited, it is alleged in the petition and statement of appeal that the writing in controversy probated in the county court is not the last will and testament of Mrs. Newton and was never executed by her in conformity with the provisions of the laws of this state with reference to the execution of wills.

In an amended petition it is alleged that the defendants named therein, long after her death and knowing that Mrs. Newton did not leave a will, entered into an agreement and conspiracy among themselves to procure some one to forge a will and to sign the name of Mrs. Newton thereto; that pursuant to such conspiracy they procured M. E. Gilbert to write and prepare the will which was probated in the Ballard county court, and procured some person unknown to plaintiffs to sign such will, and procured the subscribing witnesses to sign same knowing that the name of Mrs. Newton had been forged.

Each party gave to the other notice as required by law that the signature of Mrs. J. L. White Newton to a number of documents set forth in the notice would be offered for comparision as to her signature and handwriting.

Trial before a jury resulted in a verdict finding the paper offered in evidence not to be the last will of Mrs. J. L. White Newton, and from a judgment entered in conformity with the verdict the propounders of the will are appealing.

After the will and order of probate had been introduced by the county clerk, M. E. Gilbert, an attorney at Paducah, testified that Mrs. Newton came to his office on January 22, 1932, and asked him to prepare the will for her. He made a draft of a will which he thought embodied her directions as to the disposition she wished to make of her property. She was dissatisfied with it, however, and he redrafted it. The subscribing witnesses testified that Mrs. Newton signed the purported will in their presence and in the presence of each other they subscribed their names as witnesses. There is some discrepancy and contradiction in the evidence of the attorney and the subscribing witnesses as to when the paper was executed and when and how the subscribing witnesses were procured, which ordinarily would be considered of no moment, but considered in connection with all the proven facts and circumstances take on some significance. After this evidence was introduced to establish the execution of the will, contestants introduced a number of witnesses; but it will be impossible to give more than a summary of their evidence.

R. L. Myre, an attorney at Paducah, testified that some time in the summer following the death of Mrs.

Newton, some heirs requested him to make an effort to ascertain if she left a will; that in the course of his investigation he asked Mr. Gilbert if he had ever written a will for Mrs. Newton, and Gilbert told him that he had written a will three or five years before that time, but said nothing about having written a will for her in 1932 or of having written two wills. There is other evidence as to similar statements made by Mr. Gilbert. Lee Ray testified that in the fall or early winter of 1932, Mr. Gilbert came out to his store and asked him if he would sign a bogus will. At the time he did not tell him whose will it was, but later told him it was Mrs. Newton's will and offered him $50 to sign it. He testified that he told Gilbert it would be wrong and refused but indicated that he might find a man to sign it; that Gilbert returned in a week or so to see if he had gotten a man. On cross-examination he testified that when Gilbert returned he was accompanied by appellants Charlie Ellis and J. K. (Jim) Ellis; that on this occasion Mr. Gilbert had little to say and the others did most of the talking. On redirect examination he testified that while the three men were sitting in the car together, J. K. or Charlie Ellis insisted on him signing the will, but he turned the proposition down. H. B. Tanner testified that in the fall or early winter of 1932, M. E. Gilbert offered him $50 to sign a will he had written; that he told Gilbert he could not do a thing like that, and the latter told him other attorneys in Paducah whom he named did those things; but he still refused. Ollie Denny testified that appellant Jim Ellis came to him at his filling station and tried to get him to sign a bogus will, but he refused. A number of witnesses, who were or had been engaged in banking business and who testified that they had had experience in examining, comparing, and determining the genuineness of signatures, were shown a number of signatures of Mrs. Newton which were admitted or proved to be genuine and were asked to compare these signatures with the signature to the purported will and asked to give an opinion as to its genuineness of the latter signature. They gave as their opinion that the signature to the will was not that of Mrs. Newton. There is also evidence of a number of witnesses as to statements made by Mrs. Newton after January 22, 1932, indicating that she had not made a will.

M. E. Gilbert and all the appellants who testified

stated that they did not enter into a conspiracy as charged by appellees. M. E. Gilbert denied the statements of witnesses that he attempted to procure them to sign a forged or bogus will. J. K. (Jim) Ellis denied that he asked J. O. (Ollie) Denny to sign a will or offered him $50 to do so. He further denied that he offered to give Lee Ray $50 to sign a bogus will or that he requested him to sign such a will. He stated, however, that he received information that Ray was one of the witnesses to Mrs. Newton's will and went to see if he could tell him anything as to its whereabouts; that Ray told him he believed he could find or could locate the will; and that either he or his brother Charlie remarked that the family would pay $50 if he did locate it. Dr. Ellis only testified concerning the alleged conspiracy. He was not asked nor did he testify anything about Mr. Ray's statement that he (J. K. Ellis) and M. E. Gilbert had offered Ray $50 to sign the will. Appellants also introduced witnesses to testify to statements made by Mrs. Newton indicating that she had made a will. Appellant Mrs. Ollie Newman, who lived on a farm adjoining her sister Mrs. Newton, testified that after Mrs. Newton's death she received information concerning a will and made an effort to locate it; that a day or so before Christmas, 1933, in stirring up a straw mattress at her home she found a sealed envelope containing the will. She also found with it a farm account book kept by her sister. According to the evidence, their homes were only a few hundred yards apart and Mrs. Newton, who was separated from her husband, would spend as many as three nights a week with Mrs. Newman, and she and Mrs. Newman's daughter would occupy the bed in which the will was found. When not at the home of Mrs. Newman, Mrs. Newton would spend the night at her own home and some of Mrs. Newman's family or some of her other brothers or sisters would stay with her. It appears from the evidence that Mrs. Newton kept her other papers, such as notes and mortgages, at her own home. One or two witnesses testified to statements by Mrs. Newton that her husband was continually examining her papers and indicated that she would have to find a hiding place for her will. Mrs. Newman testified that the occasion on which she found the will was the first time she had stirred the straw mattress since the previous April.

Two witnesses, who had corresponded with Mrs. Newton and testified that they were familiar with her writing, gave as their opinion that the signature to the will was her signature. Neither of these witnesses gave evidence of experience in examining and comparing handwriting, and one of them indicated on cross-examination that some of her information was acquired by revelation and communication with Mrs. Newton after her death.

As the principal ground relied on for reversal, it is argued in effect by counsel for appellants that by introduction of a will regular on its face and by evidence of subscribing witnesses and the attorney as to its execution in accordance with the required formalities of the law, they made out a prima facie case and cast the burden upon appellees to show otherwise, and that appellees failed to meet the burden with substantive evidence or with any evidence meeting the requirements of the scintilla rule, and it is therefore urged that the court should have sustained appellant's motion for peremptory instruction.

In our summary of the evidence there are a number of matters of minor importance, not detailed, tending to sustain the postions of the respective parties. There are likewise numerous facts and circumstances, not enumerated, which have a tendency to discredit the statements of some of the witnesses. A vigorous attack is made upon the evidence of experts concerning the genuineness of the signature to the will, and authorities are cited which discuss the value of such evidence and indicate that it must be received with caution and scrutinized with great care. Regardless, however, of the value and weight of such evidence, it is competent. While some controversy is made concerning the effect and purpose for which evidence that some of appellants and the attorney who drafted the will were attempting to procure signatures to a forged will may be considered, it is our conclusion that this was substantive evidence and was competent and admissible on the question of the authenticity of the will.

We are not called upon to determine what would be the relative value of the evidence of handwriting experts standing alone as against the positive evidence of attesting witnesses who testified that they saw testatrix sign the instrument, since there are other proven

facts and circumstances supporting the opinion of the expert witnesses which substantially support the theory of appellees. Counsel for appellants recognize the rule that where there is any evidence, however slight, to sustain a cause, it should be submitted to the jury. Section 4850, Kentucky Statutes, relating to appeals in will cases, prescribes how such appeals are to be heard and determined in this court and provides that the appellate court shall give the same effect to the verdict of a jury in a will case as is given the verdict of a jury in other civil cases. This direction of the statute has been consistently followed by this court. Lischy v. Schrader, 104 Ky. 657, 47 S. W. 611, 20 Ky. Law Rep. 843; Bramel's Ex'r v. Crain's Guardian, 157 Ky. 671, 163 S. W. 1125; Duval v. Duval, 249 Ky. 186, 60 S. W. (2d) 351.

Therefore, since we have concluded that the evidence was sufficient to take the case to the jury, we are left to determine, by standards already fixed by the Legislature and by this court, whether there was sufficient evidence to sustain the verdict; and that decision is not made to depend upon what this court might have done if left to determine the issues made by proof, since we may not substitute our opinion for that of the jury where there is evidence of substantive and probative value to support their verdict. Langford's Ex'r et al. v. Miles et al., 189 Ky. 515, 225 S. W. 246; Duval v. Duval, supra.

In view of the conflict in evidence and the many circumstances to which we have adverted as tending to discredit the evidence of some of the witnesses, the jury, who no doubt knew many if not all of the parties and witnesses who testified, heard their statements, observed their deportment, and general demeanor, were thus better enabled to determine the credibility of the witnesses as well as the weight to be given their evidence than the court could be by a reading of the record. Even though the verdict may not be in entire accord with our views as to the weight that should have been given the evidence, it unquestionably is sustained by substantial evidence and in such circumstances should not be disturbed.

After the court had overruled appellants' motion for a new trial, they moved the court to extend the order theretofore made so as to adjudge the costs of the action against Charlie Ellis and T. T. Newman as

executors under the will of Mrs. Newton and that a fee in the sum of $1,000 be allowed for the attorneys for the executors and propounders of the will to be taxed as part of the costs of the action against the estate of Mrs. Newton. Exceptions were saved to the court's order overruling these motions, and it is argued that the lower court erred in this particular. So far as the record discloses, the executors named in the purported will never qualified and they did not act in a fiduciary capacity but acted in concert with the other appellants as beneficiaries under the will in probating and attempting to sustain it.

In the case of Wilson et al. v. Wilson et al., 188 Ky. 53, 221 S. W. 874, 875, 10 A. L. R. 780, it is said:

"The will was offered for probate by six of the children, not in any fiduciary capacity, but purely in their individual capacities and as beneficiaries under the will. The contestants were represented by counsel of their own choosing, whom they will have to pay, and under these circumstances it would be extremely inequitable, we think, to require them to help pay the attorneys who represented only the interests of their adversaries."

In the circumstances established by the record, that case is conclusive of the question presented.

Judgment affirmed.

Whole court sitting.