## Grigsby v. Mosley et al.

April 28, 1944

Rehearing Denied June 2, 1944.

S. M. Ward for appellant.

Joe P. Hobson for Hobson and Hall.

OPINION OF THE COURT BY JUDGE TILFORD—Affirming.

This action was instituted on November 4, 1936, by the infant children and widow of Frank Grigsby, who died on February 19, 1923, the children acting through their statutory guardian, against the appellee, Roy Grigsby, and other persons not parties to this appeal, to quiet their title to two tracts of land, the first of which, known in this litigation as the Balls Fork tract, is described as follows: "A certain parcel or tract of land lying just above the mouth of Trace on Ball's Fork in Knott County, Kentucky, and beginning at a white walnut tree about two hundred yards above the mouth of Trace; thence up the hill to the top of the point with J. D. Martin's line; thence with J. D. Martin's line to the farm known as Sayer's farm; thence with this line to Harvey Owens' line; thence with said line across Ball's Fork and up the point to the top of the ridge back to the point opposite the beginning where it runs down the point with Sutton's line and then to J. D. Martin's line and then across Ball's Fork again to the beginning, and said tract to include all the land owned by A. J. Grigsby on Ball's Fork at the time of his death, and containing 300 acres, more or less, and being the same

land conveyed by J. L. Grigsby to A. J. Grigsby and recorded in Deed Book 32 at page 158, Records of the Knott County Court Clerk's Office.''

We have omitted the description of the second tract containing 150 acres, more or less, since it was adjudged to belong to Anna Martin, one of the defendants, whose title is no longer in controversy. It was, however, included in the title bond, the validity of which is the storm center of this litigation, and will hereafter be referred to in our discussion of the testimony as the ''quicksand tract.''

Both of these tracts were owned by A. J. Grigsby, Frank Grigsby's father, who attempted to devise them to his widow, Sadie Grigsby, for life with remainder to his brother, Elijah, and the latter's wife, Jennie Grigsby, with the power vested, however, in the testator's widow to sell and dispose of the quicksand tract. Frank Grigsby was the only child of the testator, and, though born out of wedlock, had been legally adopted by his father. Disinherited by his father's will, he appealed from the order admitting it to probate, and succeeded in setting it aside. See Grigsby v. Grigsby et al., 249 Ky. 727, 61 S. W. 2d 605, decided by this Court on June 13, 1933.

The appellant, Roy Grigsby, is the son and grantee of Elijah Grigsby who purchased the Ball's Fork tract from Sadie Grigsby, the testator's widow, on November 10, 1925. The source of title recited in the deed from Sadie Grigsby to Elijah Grigsby was the will of A. J. Grigsby, but since the will was set aside, it is now claimed by appellant that Sadie Grigsby derived the equitable title to the tract by means of a title bond executed by Frank Grigsby and his wife, Birdie, on May 24, 1924, some two and a half months prior to the institution of the will contest. Accordingly, in the prayer of his answer and counterclaim asserting title in himself, appellant asked that the title bond be enforced and that the Court cause a deed to be made conveying to him the interest of Frank Grigsby's widow and heirs. By amended petition, the appellees attacked the title bond as a forgery; the Chancellor ordered it cancelled to the extent that it purported to convey any interest in the Ball's Fork tract; and since appellant's title is wholly dependent upon the validity of the title bond, and appellees' title is otherwise unimpeachable, it is obvious that unless the evidence raises more than a doubt as

to the correctness of the Chancellor's finding on the indicated factual issue it will be unnecessary to consider the pleas of estoppel and limitation also interposed by appellees against the title bond's enforcement or the attack made by them on the validity of the deed from the widow to Elijah Grigsby.

We approach this discussion of the title bond with hesitancy and uncertainty, the former occasioned by our dislike of imputing fraud to unidentified individuals, and the latter by the circumstances which seemingly contradict some of the suggested motives for its fabrication and, at the same time, are inconsistent with its genuineness. The instrument was not recorded for more than eight years after its execution, and neither the name of its custodian, nor the reason for the delay in recording it, is shown. Apparently, during the taking of the depositions it was in the possession of Anna Martin, who, by her pleadings, had asserted title to the Balls Fork tract as well as to the quicksand tract which was awarded her by the Chancellor. Anna Martin did not testify, notwithstanding the fact that she had deeds to both tracts, allegedly executed shortly after A. J. Grigsby's death by Sadie Grigsby, his widow, who admitted the execution of the deed to the quicksand tract, but claimed that the deed purporting to convey the Balls Fork tract was a forgery. All parties seem to agree that Frank Grigsby and his wife, Birdie, did execute a title bond to Sadie Grigsby for the quicksand tract, and one of the suggested explanations of the fact that the title bond as recorded includes both tracts is that some unauthorized individual inserted a description purporting to be that of the Balls Fork tract in order to lend effectiveness to the forged deed purporting to convey that tract to Anna Martin. Whether or not the recorded instrument showed the insertion on its face, we are unable to say, since it was not filed with the depositions, and, according to the statement of counsel in brief, it was destroyed under wholly unexplained circumstances during the progress of the trial. Appellees claim that the inclusion of the Balls Fork tract in the title bond was effected by rewriting the first page and attaching it to the second page which contained the acknowledgment taken by a notary who was a member of the firm of lawyers who represented Frank Grigsby in the will contest. It may be noted that the recorded title bond was executed six days prior to the date on which Frank

Grigsby employed this firm of lawyers, for a percentage of the amount which might be recovered, to institute the proceedings contesting his father's will, and it is argued on behalf of appllees that these lawyers, one of whom took the acknowledgment to the title bond, would not have accepted the employment on these terms if the title bond had included the Balls Fork tract, which, with the quicksand tract, comprised all the property at stake in the will contest. But the member of the firm who took the acknowledgment died without giving his deposition in this case.

Moreover, it is admitted that Birdie Grigsby, the wife of Frank Grigsby, was able to write, and during her cross-examination by Anna Martin's attorney, what purported to be the original of the title bond was exhibited to her and she was questioned as to the genuineness of her signature as it appeared thereon, which she denied. Yet, the certified copy of the recorded title bond filed in the record does not bear her signature, or any signature purporting to be hers, but contains only what purports to be her mark.

Birdie Grigsby, Frank's widow, testified positively that the title bond which she and her husband executed, and to which she signed her name, contained no mention or description of the Balls Fork tract, and that the sole consideration for its execution was Sadie Grigsby's agreement that if Frank would relinquish to Sadie his claim to the quicksand tract so that she, Sadie, could convey it to Anna Martin, pursuant to A. J. Grigsby's dying request, she, Sadie, would help Frank break the will, and thus obtain the Balls Fork tract. Sadie Grigsby, although she denied having made any agreement respecting her husband's will, corroborated the testimony of Birdie in all material respects. Moreover, she vehemently denied ever having executed any deed to the Balls Fork tract to Anna Martin.

Dug Hayes, a son-in-law of Anna Martin, who, with the notary, now deceased, witnessed the execution of the bond, testified in behalf of appellant that a monetary consideration, amount unnamed, was paid Frank Grigsby, thus contradicting the testimony of Birdie Grigsby and Sadie Grigsby, as well as the instrument itself, which recited "$1.00 and other good and valuable consideration." He further testified that this money was furnished by John Martin and paid by check drawn

on Anna Martin. He was unable, however, to state that the title bond included more than the quicksand tract, saying that John Martin had bought the quicksand land, whether before or after the title bond was executed, he was not certain, and at one time was interested in acquiring an unidentified piece of land adjoining "his own home farm." Whether this latter was any part of the Balls Fork tract does not appear. His most definite recollection seems to have been that Frank Grigsby "signed by mark and his wife wrote her name." Thus, it would appear to be definitely established that the title bond actually recorded was not the one actually executed, a circumstance which adds great weight to the testimony of Birdie and Sadie Grigsby, contradictory though the latter is in many particulars. While it is possible, as appellant's counsel suggests, that the emphasized discrepancies may have resulted from an error of the clerk in copying, no testimony was introduced tending to show that such a mistake was made, unless we should consider as of that character the testimony of appellant that the original title bond which he saw in the Clerk's office many years later "was signed by Frank's mark and signed by Bertha Grigsby." Moreover, the disappearance of the title bond purporting to bear Birdie Grigsby's signature and exhibited to her by Anna Martin's attorney lends color to the theory that this instrument, or at least the first page of it, was also forged after the individual perpetrating the fraud had learned that the bond, as it appeared on the record would be attacked on the ground that it showed that Birdie Grigsby's signature had been affixed by mark, and hence was not the genuine bond. Whether the object was to defeat at all costs the claims of the widow and heirs of the illegitimate son who had succeeded in nullifying his father's purported will, or whether it was solely to vest Anna Martin with title to the Balls Fork tract in addition to the quicksand tract, we are not called upon to determine. Doubtless strengthening the Chancellor's belief that a forgery was committed, whatever the motive, is the fact that although the deed conveying to Anna Martin the quicksand tract was recorded shortly after its execution, the deed purporting to convey to her the Balls Fork tract executed at approximately the same time, like the alleged title bond, was not recorded until many years thereafter. The acknowledgments to both deeds were taken by her husband, the

aforesaid John Martin, in his capacity as notary public; and, as heretofore indicated, she made no attempt to defend the charge that the deed to the Balls Fork tract, which was dependent for its validity upon the inclusion in the title bond of a description of the Balls Fork tract, was a forgery. All that we are called upon to decide is whether there was sufficient evidence to justify the Chancellor's cancellation of so much of the title bond as purported to contain a description of the Balls Fork tract; and in view of the well established rule that we will not disturb the Chancellor's finding of fact when we have no more than a doubt as to its correctness, we must affirm his conclusion.

It might also be added that it is exceedingly doubtful whether all or only a portion of the Balls Fork tract was attempted to be included in the title bond. The acreage is given as less than half of that included in the description contained in the deed to A. J. Grigsby, and while appellant's counsel is certain that it includes all of the Balls Fork tract, appellees' counsel speak of it as including the most valuable part. In the absence of a plat or an intelligent explanation of the terms employed, we would perhaps be justified in holding that the Balls Fork tract was not included in the title bond, irrespective of the genuineness of that instrument as recorded.

In reaching the announced conclusion, we have not overlooked appellant's contention that the notary's certificate that the title bond had been acknowledged by Frank and Birdie Grigsby was immune from attack under the provisions of KRS 61.060. However, in an amended petition appellees expressly admitted the execution of a title bond covering the quicksand tract, and alleged that the instrument to which the acknowledgment was attached had, since its execution, been fraudulently altered and changed so as to include the Balls Fork tract. Appellant concedes that the Statute cited is not applicable if the charge contained in the amendment had been adhered to and sustained by the testimony, but he insists that the charge was later abandoned by an amendment which alleged that the title bond in its entirety was a forgery. We think that the pleadings can be construed as containing alternative statements of fact; but even if this were not so, the pleading in which the entire instrument was alleged to have been forged contained the

charge that the certificate was made by the notary through mistake, "or as the result of fraud on the part of the defendant, Anna Martin," and hence was within the exceptions contained in the Statute. It is true that to be within the exception, the fraud must have been committed by or on behalf of the party benefitted, and that the title bond named Sadie Grigsby as its beneficiary. But, as before stated, Anna Martin claimed that she was the grantee in a deed from Sadie Grigsby conveying the Balls Fork tract, and if this deed had been established as genuine, the title bond, though later executed, would have inured to Anna Martin's benefit.

Appellant also complains of that portion of the judgment which awards Frank Grigsby's attorneys a one-half interest in the land in satisfaction of their attorney fees, and names them as appellees in his statement of appeal. Without passing upon the propriety of the Court's action with respect to the attorney fee, it is sufficient to say that since the land has been awarded to the widow and children of Frank Grigsby, they alone could complain, and this they have not done so far as the record discloses.

Judgment affirmed.