## Hendricks et al. v. Johnson et al.

May 26, 1944.

Harlin & Harlin and Rodes & Willock for appellants.

G. D. Milliken, Sr., for appellees.

OPINION OF THE COURT BY JUDGE TILFORD—Affirming.

At the outset it is necessary to note the fact that in the statement of appeal which we have followed in captioning this opinion, the actual appellees are designated as appellants, and the actual appellants, as appellees. While this error would justify us in dismissing the appeal, we have concluded, since counsel have not raised the point, to ignore the error, although, in the interest of clarity, it is necessary in expressing our views to refer to the named appellees as appellants and to the named appellants as appellees.

With this explanation, we shall outline the facts as we have been able to gather them from the incomplete and confused record on which the parties have elected to prosecute this appeal.

On September 2, 1941, the County Court of Warren County admitted to probate the will of C. B. Johnson which was executed in the forenoon of February 5, 1935. Some time prior to February 1, 1942, we are informed by the briefs of counsel, one or more of the present appellants, filed in the Circuit Court a petition in equity attacking the will on the grounds that the testator did not possess sufficient mental capacity to make a will, and that its execution was procured by undue influence. Two amendments to this petition appear in the record, although the original does not, the first of which merely

corrected the caption, and the second of which alleges that the first will was revoked by a second will. Following the amendment appear several defensive motions, special and general demurrers to the petition, and a motion to dissolve a temporary injunction, the disposition of which motions and demurrers is not shown, although it is stated in the brief of appellants' counsel that "this suit in equity was abortive and the Circuit Judge properly held that the procedure was improper."

Subsequently, the exact date not being shown, the appellants filed in the County Court a petition as authorized by Section 518, Subsection 9, Civil Code of Practice, seeking to vacate the order of September 2, 1941, and to probate an allegedly lost will executed by the testator during the afternoon of February 5, 1935, and attested by the same witnesses who had attested the morning will. The material difference between the allegedly lost will executed in the afternoon and the probated morning will is that in the latter, the testator's two pieces of real estate were devised to his widow outright, and in the former, they were devised to her for life with remainder to her grandsons, Kimble and Walter Johnson, who are the sons of the appellant, Carson Johnson, a child born to the testator of a former marriage.

In their petition filed in the County Court appellants alleged that on February 16, 1942, they discovered that the testator had executed the later will, although, after diligent search, they had been unable to locate it. On April 27, 1942, the County Court, after a trial at which the appellees introduced no evidence, entered a judgment vacating the order probating the morning will, and directing that the afternoon will be probated. On June 12, 1942, the appellees appealed to the Circuit Court from the County Court's judgment of April 27th.

Notwithstanding the statement of appellants' counsel that the Circuit Judge regarded the equity suit as abortive, it would appear that he proceeded to try it. The suit in equity was numbered 16,683 and captioned, "Carson Johnson et al. vs. Clara Hendricks, et al.;" and the common law action (the appeal from the County Court) was numbered 71596L, and the subsequent proceedings appearing in the record, with the exception of the trial order which shows both captions, bear only the caption of the equity suit, and appear to relate to that action alone. While the bill of exceptions bears

the caption of the equity action, it, nevertheless, carried the number of the common law suits. The only conclusion which we are able to draw from the incomplete record, is that the court treated the equity action as an appeal by the present appellants from the order of the County Court of September 2, 1941, admitting the morning will to probate, and, with the consent of the parties, tried it in conjunction with the appellees' appeal from the judgment of the County Court setting aside the order of September 2, 1941, and probating the afternoon will. Neither party offered written instructions, although the court prepared for the jury's use two forms of verdict, the first of which read: "We, the jury, find the lost paper testified to be the last will and testament of Charlie Johnson." The second read: "We, the jury, find the purported lost paper not to be the last will and testament of Charlie Johnson." The only instruction which the court gave the jury was that nine of them might find a verdict, but that if less than twelve agreed, those agreeing would have to sign it. The jury unanimously found the purported lost paper not to be the last will of Charlie Johnson, whereupon, the court entered a judgment setting aside and holding for naught the judgment of the County Court entered on April 27, 1942, which necessarily had the effect of establishing the morning will probated on September 2, 1941, as the last will and testament of C. B. Johnson.

Summarized, the two principal grounds urged for reversal are that (1) the court erred in not sustaining appellants' motion for a directed verdict and in leaving to the decision of the jury both the law and the facts of the case; and (2) that even "if the evening will failed because of proof as to its continued existence until the death of the testator" the proof of its execution necessarily operated to revoke the morning will, and the jury should have been so instructed, and that in any event the court erred in entering a judgment which, in effect, re-established the morning will, since a will revoked by the due execution of a later will can only be revived by reexecution.

The major fallacy underlying these contentions of appellants is the assumption that the court was bound to accept the testimony of the two subscribing witnesses to the morning and afternoon wills that both wills had been duly executed. It is true that these witnesses were

not contradicted and that they were in a sense testifying against their interest, since they were the son and daughter of a sister of the testator's widow who died in July, 1941, some five weeks after the death of her husband, the testator. But there were circumstances shown by the record sufficient to cast doubt upon their veracity, among which was that it was upon the niece's testimony that the morning will was probated. It is true that she says that she was not asked on that occasion if there was a later will, but she was an adult and somewhat active in legal matters, and her silence as to a later will is not without significance. Moreover, there was evidence of testator's financial situation, and his obligations to and relations with his wife, which might easily be construed as indicating that the provisions of the morning will were more consistent with his expressed intentions than the provisions of the alleged lost will. In addition, the testimony of Lt. Col. Maurice Burton, the lawyer to whom the will was taken for inspection by the testator or the niece at the testator's request, contains much that would indicate that it was the morning will that was shown him; and in making this statement we have not overlooked the fact that in a former deposition which was thought to be lost but which was later found, the witness had made statements indicating that it was the later will which had been exhibited to him. It is not claimed that any living person, other than the subscribing witnesses, ever saw the alleged lost will, unless it be assumed that it was that instrument which was exhibited to Burton; and its disappearance is unaccounted for except by the niece's statement that following the testator's death, the widow told her that she had destroyed it.

Our purpose in reciting these facts is not to indicate a belief on our part that the testimony of the subscribing witnesses as to the execution of a later will is false; but merely to point out some of the evidence which has induced our belief that the court was justified in submitting the case to the jury for determination· What we deem to be a proper rule in cases of this nature is, that where there is proof of circumstances casting suspicion upon the verity of testimony on which a motion for a peremptory instruction in favor of the party introducing the testimony is based, and means of directly contradicting such testimony do not exist, the court is not bound to sustain the motion but may prop-

erly submit the issue to the jury. Otherwise, justice would often be completely at the mercy of perjurers. For a discussion of other situations in which the court is not bound to accept uncontradicted testimony as conclusive, see Bullock et al. v. Gay's Adm'r, etc., 296 Ky. 489, 177 S. W. 2d 883; 20 Amer. Juris. "Evidence," Sect. 1180, Pages 1030-1032; Collett v. Commonwealth, 296 Ky. 267, 176 S. W. 2d 893.

In their argument that the court erred in its instructions to the jury, or, more properly, that the court erred in not instructing the jury, appellants' counsel insist that the court, at least, should have informed the jury, in keeping with the provisions of KRS 394.080 and our decision in the case of Singleton v. Singleton et al., 269 Ky. 330, 107 S. W. 2d 273, that the execution of the evening will revoked the morning will, even though the evening will's existence subsequent to the testator's death was not proven so as to entitle it to probate. It may be true that the jury might have believed that the afternoon will had been in fact executed but that it had been revoked, and erroneously thought that such revocation re-established, or rather left unaffected, the validity of the morning will. But since there was no evidence that the testator had himself destroyed the afternoon will or otherwise effected its revocation, it is far more probable that the jury, under the evidence introduced, based its verdict on a disbelief in the execution of a second will.

Appellants' counsel likens the court's failure to so instruct the jury to the action of the County Judge who instructed a jury: "If you believe the plaintiff is right, go out and find for him. On the contrary, if you believe the defendant is right, go out and find for him. Gentlemen of the Jury, go to your room and find a verdict to the best of your ability." But, be this as it may, their own failure to offer written instructions invited the error and precluded them from complaining of it. Stanley's Instructions to Juries, Section 8, Page 44; Hoopes Brothers & Thomas Co. v. Adams et al., 221 Ky. 527, 299 S. W. 162; Grigsby v. Grigsby, 249 Ky. 727, 61 S. W. 2d 605.

Finally, appellants' counsel insist that the court wrongfully permitted counsel for appellees to inject into the case the questions of testamentary incapacity and undue influence, principally by a question pro-

pounded to Carson Johnson during his cross-examination. But this was after other questions bearing on the testator's condition and his relations with his wife had been asked and answered without objection. Moreover, it must not be overlooked that the court was also trying appellants' equity case, treating it as an appeal from the order of the County Court probating the morning will, and that the equity case, so we are informed by brief, was bottomed upon the allegations that the testator lacked sufficient mental capacity to execute a will and had been unduly influenced.

Considering all the factors involved, we are unable to say that any errors prejudicial to appellants' substantial rights—at least none of which the appellants are in a position to complain—were committed by the trial court, or that the verdict of the jury rejecting the allegedly lost afternoon will and establishing the morning will was flagrantly against the weight of the evidence.

Judgment affirmed.