Sanford REFFETT, et al., Administrator of the Estate of Mae Reed Reffett, Appellants,

v.

Siddie HUGHES et al., Appellees.

Court of Appeals of Kentucky.

Nov. 26, 1965.

Joe Hobson, Cassie J. Allen, Prestonsburg, for appellants.

Paul C. Combs, Prestonsburg, for Siddie Hughes, and others.

Howard, Francis & Howard, Prestonsburg, for Travelers Ins. Co.

J. K. Wells, Paintsville, for Fidelity & Guaranty Ins. Co., Home Ins. Co. and Albany Ins. Co., for appellee.

DAVIS, Commissioner.

This is a will contest, in which appellees, as the heirs at law of Mae Reed Reffett, successfully challenged the purported last will of Mrs. Reffett on the ground that her signature to it was forged. Appellant, surviving husband and personal representative of Mrs. Reffett, seeks to overturn the judgment which vitiated the propounded will. As grounds for reversal appellant contends that a directed verdict upholding the will should have been given, incompetent evidence was admitted and competent evidence rejected.

Mrs. Mae Reed Reffett died August 8, 1962; she and appellant had been married for over twenty-six years; no child or issue survived her. It was shown that Mrs. Reffett had executed two wills before the date of the questioned document. By the terms of each of the earlier wills her entire estate was devised to appellant.

Appellees presented evidence reflecting that in the spring of 1962 Mrs. Reffett took a will (drawn in 1960 by Honorable Joe Hobson, a reputable attorney of Prestonsburg) to the Floyd County Attorney's office. She expressed desire to consult the county attorney as to the effect of the will; when she learned that the lawyer was not in his office she exhibited the will to the attorney's secretary and asked her view of the will's effect. The secretary advised her that so far as she could tell, the provisions of the will made Sanford Reffett, appellant, its sole beneficiary. Then, the secretary testified, Mrs. Reffett tore up the will and threw the scraps in the wastebasket. Mrs. Reffett said that the will did not express her true wishes, and that she wanted her nephews and nieces to receive some of her property. Mrs. Reffett was assisted into the office at that time, and "seemed sick", according to the county attorney's secretary.

The record discloses that the 1960 will had been kept in a lock box in a bank at Martin; the lock box was appellant's; Mrs. Reffett did not have a key to the lock box. The record is silent as to what happened to the will which antedated the 1960 will. It would have been revoked by the 1960 will anyway.

On the morning of August 8, 1962 (date of Mrs. Reffett's death), three of the appellees, sisters of Mrs. Reffett, first learned that Mrs. Reffett had been taken to the hospital in the early morning hours. Banner Mann, husband of appellee Gladys Mann (sister of decedent), testified that he saw and talked with appellant near the hospital about eight o'clock that morning. According to this witness, appellant expressed concern over his failure to locate Mrs. Reffett's will in the bank lock box; at the time of this conversation Mrs. Reffett was still living, although she died sometime in the mid-afternoon. Mann said that appellant used the expression "I'm ruined"—and asked whether Cora (i. e. Cora Reed, sister of Mrs. Reffett, and an appellee) had obtained the lock box key and taken the will out. Mann recalled, in part: " * * * and I hesitated just a minute because I hated to say that I had heard it, I didn't know, and I said: 'You ask Gladys' * * *". The impact of this testimony left the impression that appellant *first* expressed his anxiety about the whereabouts of the will, and *then* informed his brother-in-law that Mrs. Reffett was ill in the hospital.

Other appellees testified that appellant gave them to understand that he had not been able to locate any will of Mrs. Reffett's shortly after her death. In fact, they asserted that appellant never did inform them of his finding of the purported will under attack in this suit.

Appellant testified that he had not known that his wife had destroyed the 1960 will, nor could he explain how anyone obtained his lock box key to withdraw the will. His evidence seems to imply that one

of the appellees purloined the key for the sinister purpose of destroying the 1960 will, although no blunt statement to that effect is made. At any rate, appellant said that he found the questioned will, a paper bearing date July 25, 1962, in a "traveling bag" in his residence. The bag is here as an exhibit, and contains miscellaneous papers as if used as a repository for such items. Appellant explained that he happened to run across the challenged will when he was searching through the bag for his car title papers. He made this discovery some ten days to two weeks after Mrs. Reffett's death. It is observed that the certification on the purported will reflects that it was admitted to probate on September 24, 1962, more than a month after Mrs. Reffett's death; nobody makes any point of this, however.

The purported will is a typewritten instrument in words and figures as follows:

"I, Mae Reed Reffett, of Hueysville, Floyd County, Kentucky, do make, publish and declare this to be my last will and testament, and I hereby revoke all other wills by me heretofore made.

*First*: I direct that all my debts and funeral expenses be paid and that a monument be bought for my grave.

*Second*: I will and give to my husband, Sanford Reffett, of Hueysville, Kentucky, absolutely, all my property of every kind and nature. If I have a bank account at the time of my death it is to be his.

*Third*: I want Sanford Reffett to be appointed administrator of my estate and executor of my will and he is not to be required to fill any bonds of any kind.

In testimony whereof, I have signed my name at Hueysville, Kentucky, this the 25th day of July, 1962., in the presence of the persons who signed as witnesses, at my request in my presence and in the presence of each other.

/s/ Mae R. Reffett

WITNESSES:
/s/ Chester Neeley
/s/ Frank Chaffins"

It will be observed that except for the somewhat unusual feature of the attestation clause's being in the body of the instrument, the purported will suggests that its draftsman had more than a fleeting acquaintance with the business of drawing a simple will. Appellant was at complete loss to explain the origin of the 1962 challenged will; neither could he account for its being in the traveling bag. His wife had never told him about it. The two attesting witnesses were "sometime" employees of appellant, but apparently neither of them had ever hinted to him that they had served as testamentary witnesses for Mrs. Reffett.

Appellees presented two witnesses who deposed that the signature on the purported will was forged. One of these was a bookkeeper at the bank where Mrs. Reffett kept her checking account. The other was Maxwell Allen who gave evidence as being a qualified examiner of questioned documents. The latter prepared a photographic exhibit of the questioned signature and certain admittedly genuine signatures. KRS 422.120 was followed in obtaining the genuine signatures. Each of the handwriting witnesses pointed to various dissimilarities between the questioned and admitted signatures. Mr. Allen laid heavy stress on what he termed the "rhythm," by which we understand him to have meant the beginning and closing flourishes, coupled with the apparently uninterrupted inscribing of the body of the genuine signatures, as opposed to the studied, belabored, and uneven pattern in the questioned signature. Microscopic examination of the questioned and genuine signatures was made by the jury, with the aid of Mr. Allen's microscope.

The two attesting witnesses related that Mrs. Reffett had caused them to sign the will at a filling station across from her

home. There was some discrepancy in the details of their evidence; they were shown to have been long-time acquaintances and sometime employees of appellant. Some evidence was presented attacking the credibility of one of them. One of the attesting witnesses did not recall seeing Mrs. Reffett sign the paper.

■ Appellant strongly urges that under the factual situation at bar the trial court should have directed a verdict upholding the will. Reliance is had upon Pioneer Coal Co. v. Polly, 208 Ky. 548, 271 S.W. 592; Polley v. Cline's Ex'r., 263 Ky. 659, 93 S.W.2d 363; Roberts v. McCown, 288 Ky. 543, 156 S.W.2d 840; Martin v. Webb, 300 Ky. 11, 187 S.W.2d 828, and Cline v. Wenger, Ky., 263 S.W.2d 91. Authorities are cited from other jurisdictions as well. We have no question concerning the soundness of the cases cited; our difficulty is that under the circumstances of the case at hand those cases are not apposite. In none of them was there any set of circumstances sufficient to cast an aura of suspicion about the will's validity. There was simply the opinion testimony of handwriting experts opposing the unrefuted, unchallenged, positive evidence of eyewitnesses who saw the execution of the will. In such circumstances we have held, as the cited authorities reflect, that opinion evidence is insufficient to sustain a verdict against the will.

■ In McKinney v. Chastain, 298 Ky. 833, 184 S.W.2d 240, this court recognized the obviously sound principle that handwriting opinion evidence, when supported by proof of circumstances casting suspicion upon the verity of the testimony concerning execution of the will, *is* sufficient to require submission of the issue to the jury. The cited case relied on Hendricks v. Johnson, 297 Ky. 643, 180 S.W.2d 868. Of like import is Ellis v. Moss, 257 Ky. 168, 77 S.W.2d 377. We are persuaded that the circumstances shown in this case clearly bring

the lawsuit within the purview of the just cited precedents. Indeed, until this good day the unknown draftsman of the document has not seen fit to come forward. This circumstance alone shrouds the transaction with suspicion. Therefore, we conclude that the trial court properly submitted the issue to the jury.

Appellant points to various instances in which he asserts the trial court erroneously admitted incompetent evidence. We shall deal with them in the order presented in brief:

■ First, it is said that error was committed by requiring appellant to admit that his wife had been ill "off and on" for nearly twenty-six years. We are unable to find any prejudice against appellant in this respect. It is observed that the county attorney's secretary testified, without objection, that Mrs. Reffett appeared ill when she tore up the 1960 will. Moreover, testimony was presented for appellant that Mrs. Reffett was unable to go to Mr. Hobson's office when she signed the 1960 will.

■ The next attack on the evidence relates to testimony by appellee, Gladys Mann, in which she was permitted to say that appellant did not come to her home during the night to notify her of the serious illness of her sister. In light of the situation at bar, we think it was proper for evidence to be received which tends to shed light on the entire circumstances of the case. It was the contention of appellees that appellant's prime concern was the property of his wife, rather than her health. The challenged testimony was relevant as to that issue.

■ The same may be said of the testimony from Mrs. Mann in which she related that appellant told her he would give her the personal property of Mrs. Reffett after appellant remarried. It is asserted that it was highly prejudicial to appellant to inject

into the case the fact that he had remarried. We are not able to accept this argument. The fact that appellant had remarried at the time of the trial was nothing more than the usual background identification material respecting any litigant. What we have said respecting the challenged evidence from Mrs. Mann is equally applicable to the claimed error as to the same type evidence from Mrs. Reed, another appellee.

■ It is claimed that the trial court erroneously permitted Mrs. Reed to say that Mrs. Reffett had told her that she wanted her sisters to have her property. However, the court admonished the jury not to consider the evidence; appellant sought no other curative action from the trial court, and may not now be heard to complain.

■ Finally, it is said that it was prejudicial error for the court to permit Banner Mann to testify that appellant said, "I am ruined." This evidence was competent; it too tended to support appellees' theory that appellant's fundamental interest was in the estate of his wife.

■ Appellant contends that the trial court should have permitted him to show that he had paid for the real estate which was deeded to his wife. Such evidence, coming from the appellant, was properly rejected. Clearly it would have contravened KRS 421.210 to have permitted appellant to testify in his own behalf as to these transactions with the decedent.

■ Neither was it error for the trial court to deny appellants' effort to have the expert witness, Allen, disclose the amount of compensation to be paid him for his services in the case. The court did permit a showing that the witness was being paid, but denied the effort to show the amount of payment. This was proper. See Current v. Columbia Gas of Kentucky, Ky., 383 S.W.2d 139, 143, 144.

The judgment is affirmed.

HILL, J., not sitting.